Rose MORRIS, Appellant,

v.

SHELL OIL COMPANY and Paul L. Browne, H. C. Heigold, J. Farrell Browne, and Gregory F. Browne, Statutory Trustees of Independent Oil Company, Respondents.

No. 54526.

Supreme Court of Missouri, Division No. 1.

April 12, 1971.

As Modified on Court's Own Motion May 10, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied May 10, 1971.

**40**

Hullverson, Richardson & Hullverson, John J. Frank, St. Louis, for appellant.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondents Paul L. Browne, et al.

Hocker, Goodwin & MacGreevy, John M. Goodwin, St. Louis, for respondent, Shell Oil Co.

ROBERT A. MEYERS, Special Judge.

Plaintiff sued Midwest Floor Company, Independent Oil Company and Shell Oil Company alleging they were negligent in failing to warn her of dangers involved in the use of Cyclo Sol 63, a petroleum solvent, as a cleaning agent. During the trial, plaintiff voluntarily dismissed Midwest, who she alleged gave her the product. At the conclusion of plaintiff's evidence, the trial court sustained a motion for directed verdict for Independent, who is alleged to have sold the solvent to Midwest. The case against Shell, the alleged manufacturer, was submitted to the jury and a verdict resulted for plaintiff in the sum of $6,000.

The trial court sustained Shell's after-trial motion for judgment in accordance with its motion for directed verdict, and, in the alternative, granted Shell a new trial. Plaintiff thus appeals from the adverse rulings in favor of Independent and Shell. From this record, the plaintiff is entitled to have the evidence, including reasonable inferences therefrom, construed in the light most favorable to her. Hightower v. Edwards, Mo., 445 S.W.2d 273. None of the defendants produced any evidence.

Plaintiff's evidence showed that Shell was the manufacturer of Cyclo Sol 63 and sold the product in tank car lots to Independent as a jobber or distributor. Independent had purchased several thousand gallons of Cyclo Sol 63 from Shell in the year prior to the occurrence. Midwest had purchased Cyclo Sol 63 from Independent for one to two years prior to the occurrence in question for use as a wax remover. The latter purchases were made in unmarked five-gallon cans.

Plaintiff had been a maid for several years, employed in a residence in St. Louis. Her employer hired Midwest Floor Company to refinish hardwood floors in the house. Midwest used the petroleum solvent called Cyclo Sol 63 for the purpose of removing wax from the floors. The plaintiff testified that at her request, one of the employees of Midwest gave her some of the solvent to use in cleaning wax from the tile floor in the bathroom. She testified that he told her to use rubber gloves when applying the solvent.

Sometime later, she took the solvent, and using a new pair of rubber gloves, started to apply it to the bathroom floor. After about five minutes, she noted a burning sensation in her hands and called it to the attention of her employer. Both she and her employer testified that the gloves had been eaten through by the solvent. Plaintiff and her employer threw away the gloves and solvent, fearing injury to other members of the household.

Plaintiff received a contact dermatitis on her hands. This involved a blistering of her hands, swelling, drying and cracking of the skin. She was treated over a long period of time by two dermatologists and as an out-patient at a hospital. Both dermatologists testified in her behalf and the hospital records were produced.

Dr. Aaron J. Reiches, a medical doctor, was one of her treating doctors. He had been specializing in dermatology for twenty-eight years. He is chief dermatologist at one hospital and associate and consulting dermatologist at a number of other hospitals in the area. During the course of his treatment, he performed a patch test on plaintiff, using Cyclo Sol 63. Plaintiff had what he described as a plus four reaction, an extreme reaction. He described Cyclo Sol 63 as a marked irritant as well as an extreme sensitizer. He further described Cyclo Sol 63 as being one of the class of petroleum chemicals which is the most common cause of industrial dermatitis. Dr. Reiches testified that a substantial number of people would be affected by a contact with this product. Concerning the plaintiff, the doctor testified that she had become sensitized from her contact with this product to the extent that contact with ordinary household cleaners could cause a recurrence of her problem. Plaintiff testified she was no longer able to work as a maid and was seeking other employment.

The superintendent for Midwest and the employee on the job in question were both called as witnesses by plaintiff. They testified they had been using Cyclo Sol 63 for removing wax from floors for one to two years prior to this time, and that this was the only such product being used at the residence in question. Cyclo Sol 63 was purchased by them in unmarked five-gallon cans at the Independent Oil Company place of business at Vandeventer and Chouteau. They never received any type of warning from Independent concerning its use, and in fact, had no adverse effect from its use, although it was sometimes applied by workmen with bare hands.

Independent points out certain discrepancies in plaintiff's case. Plaintiff identified a one-gallon can as the size can from which she received the solvent. The workman denied giving her the solvent. The workman did not remember the name of the company from whom he purchased the Cyclo Sol 63, although he did describe the location of the company and testified that he purchased it as instructed. He had been instructed to purchase it at Independent Oil Company. All of these matters would present questions for the jury rather than a failure of proof as contended by Independent.

By use of interrogatories, plaintiff proved that Shell was the manufacturer of Cyclo Sol 63 and Independent one of its jobbers or distributors. Plaintiff read into evidence the following excerpts from an "Industrial Hygiene Bulletin" published by Shell, as admissions against interest:

"Because of their ability to dissolve natural fats from the skin, most petroleum products can cause some degree of skin irritation, particularly if the exposure is prolonged. Aromatics are somewhat more irritating to the skin than the non-aromic products, but the difference between aromatics and saturates is much less pronounced than in the case of eye irritation. Prolonged skin contact with all liquid petroleum products should, therefore, be avoided, and any product which gets on the skin should be removed by wiping, followed by washing with soap and water."

And quoting plaintiff's attorney as he read further:

"Page 16 of the same book is a chart. 'Name: Shell Oil Company products. Type of product: Solvents, high aromatic, high flash.' A list of the specific products at the bottom of that page shows the products of Cyclo Sol 41, 44, 50, 52, 53, 54, 56, 63, 68 and 73. Listed in that is the word 'toxicity.' 'Acute oral: Moderately toxic. Aspiration: Highly hazardous. Inhalation: Moderately toxic.' * * * 'Skin Irritation: Moderately irritating.' "

We believe that the jury could find that plaintiff suffered injury and damages as a result of her use of the product Cyclo Sol 63; that this product was given her by Midwest, which had purchased it from Independent, which in turn had purchased it from the manufacturer Shell.

The jury could find that plaintiff did not receive an adequate warning from Midwest and that Midwest received no warning from Independent. The record is silent as to whether Shell gave any warning to Independent and whether Independent received any warning from Shell.

Section 388, Restatement of the Law Second, Torts 2d, provides as follows:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or

of the facts which make it likely to be dangerous."

Midwest had purchased Cyclo Sol 63 from Independent for the express purpose of using it as a wax remover and had used it for that purpose for one to two years prior to the occasion in question. Independent had sold Cyclo Sol 63 to Midwest for this purpose. There being no contrary evidence in the record, we must conclude that the use of this product as a wax remover was intended by the manufacturer and distributor.

Since the use of Cyclo Sol 63 as a wax remover was dangerous or likely to be dangerous to a substantial number of people using it as such, the manufacturer Shell and the distributor Independent had the duty to warn of the dangers involved, provided they knew, or had reason to know, of the dangers. Braun v. Roux Distributing Co., Mo., 312 S.W.2d 758.

■ Plaintiff proved that Shell knew of the dangers involved by introducing the excerpts from the "Industrial Hygiene Bulletin" published by Shell. It was plaintiff's burden, and an essential element of plaintiff's case, that she prove that Shell failed to warn of the dangers involved. Missouri Approved Instructions 31.01. In cases where the evidence shows that the manufacturer packaged the product in a container received by the consumer, evidence by the consumer that no warning was received on the container may also be evidence that no warning was given. This was not the situation in this case. The product was sold by Shell in carload lots. It was Shell's duty to warn Independent of the dangers involved, with the intention that such warning be given the ultimate consumer. Weekes v. Michigan Chrome & Chemical Co., 6 Cir., 352 F.2d 603. Since there was no evidence that Shell failed to give a warning to Independent, the plaintiff failed to sustain her burden as to Shell.

■ Could Independent, the distributor, be held liable to plaintiff for its failure to

warn Midwest, assuming, as we must, that it received no warning from Shell? Bean v. Ross Manufacturing Co., Mo., 344 S.W. 2d 18, 25, this court quoted from Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, l.c. 186, 123 A.L.R. 933: "But as pointed out in Tullgren v. Amoskeag Mfg. Co., 82 N. H. 268, 276, 133 A. 4, 8, 46 A.L.R. 380, 'it is not necessary that damage as a more rather than less probable result should be anticipated. * * * Danger consists in the risk of harm, as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure so to do is negligence. * *' "

Independent had been a distributor of Shell products for twelve years prior to the occasion in question. The record shows, from Dr. Reiches' testimony, that petroleum solvents are the most common cause of industrial dermatitis. It contains Shell's admission that most petroleum products, especially aromatics—Cyclo Sol 63 was a "high aromatic"—are irritating to the skin. Independent purchased the product in carload lots, and distributed it in their own containers. From this record, we conclude a jury could find that Independent knew or had reason to know of the dangerous qualities of Cyclo Sol 63, and therefore a failure to warn was negligence.

The trial court's order sustaining Independent's motion for directed verdict must be reversed and the case remanded for retrial.

Having failed to prove whether or not Shell gave any warning to Independent, the plaintiff failed in an essential element of her case and the trial court was correct in sustaining Shell's after-trial motion for judgment in accordance with its motion for directed verdict. It would appear that some evidence on this matter is available and in the interest of justice the case against Shell should also be remanded for a new trial. Rockett v. Pepsi Cola Bottling Co., Mo.App., 460 S.W.2d 737.

For guidance on retrial we refer the parties to the reporter's notes, Appendix, Torts 2d, pp. 374–375, under clause (c), subsection n, of Section 388, Restatement Second (supra). There are various factors which may be considered in determining liability of one furnishing a product to a third person with the knowledge that such person is not the ultimate consumer. See also Weekes v. Michigan Chrome & Chemical Co., 6 Cir., 352 F.2d 603; Younger v. Dow Corning Corp., 202 Kan. 674, 451 P.2d 177; Bertone v. Turco Products, Inc., 3 Cir., 252 F.2d 726, and Nishida v. E. I. DuPont De Nemours & Co., 5 Cir., 245 F.2d 768.

Reversed and remanded.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of court when cause was submitted.