Cynthia **KAUFMANN, a minor, by her next friend, Henrietta KAUFMANN, and Henrietta Kaufmann, Plaintiffs–Respondents,**

v.

**Kimberly NAGLE, et al., Defendants–Appellants.**

No. 72946.

Supreme Court of Missouri, En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Joseph L. Leritz and Joseph E. Denigan, St. Louis, for defendants-appellants.

Dallas W. Cox, Jr., St. Louis, for plaintiff-respondents.

PER CURIAM.

The claim of plaintiff Cynthia Kaufmann for personal injury and the parental claim of her mother, plaintiff Henrietta Kaufmann, were submitted to the jury under instructions patterned upon *MAI 3d 17.16* —Rear End Collision. Upon jury verdicts, judgments were entered in their favor. Upon the appeal of defendant Kimberly Nagle, the Missouri Court of Appeals, Eastern District, held the evidence did not support the submission of those claims under the rear-end collision doctrine. It reversed those judgments. The case was transferred for consideration by this Court as though on original appeal, *Mo. Const., art. V, § 10; Rule 83.09.* This Court reverses those judgments and remands the case to the trial court.

In determining the sufficiency of the evidence to support the submission, this Court reviews the evidence in the light most favorable to the plaintiffs, giving them the benefit of all reasonable inferences. *Black v. Kansas City Southern Railway Co.,* 436 S.W.2d 19, 23 (Mo.banc 1968). That standard of review is of limited significance in that there is no conflict in the evidence concerning the basic facts of the collisions involved. Those basic facts are summarized as follows.

The scene of the automobile collisions involved is the vicinity of the Notre Dame High School in south St. Louis County. The high school is located on the east side of Perrin Street, a north-south street, one-way north. Ripa Street, a one-way east street, forms a "T" intersection with Perrin Street, inferably in front of the high school. Approaching the high school, Ripa Street is substantially level. In front of the high school, Perrin Street is substantially level for a distance of approximately 150 feet north of Ripa Street. At that point, Perrin Street goes sharply downhill north, a distance of approximately 150 feet, where it intersects with Arlee Street, an east-west street. Perrin Street is a blacktop street approximately 20 feet in width, with ditches on either side.

The collisions occurred on the morning of December 13, 1985. During the night, the streets had become covered with ice and snow. However, the three drivers involved had driven from their homes to the high school without incident. Plaintiff Cynthia Kaufmann, driving a Plymouth automobile, with a passenger, Janet Hoover, was the first to arrive. She parked on the east side

of Perrin Street in front of the high school. Upon entering the building, she was told she would have to move the Plymouth because they were going to snowplow the street. She and Janet returned to the Plymouth. Cynthia intended to drive to a parking lot adjacent to the high school by going north on Perrin Street and turning east on Arlee Street. After moving slowly forward, Cynthia stopped and picked up two other students, Amy Monroe and Lisa Werkmeister.

In the meantime, David Zoeller, driving a Buick station wagon, approached on Ripa Street.[1] He turned left on Perrin Street and discharged his daughter in front of the high school. He then moved north, but stopped when he saw Cynthia was picking up the two students. He stopped approximately 60–70 feet behind Cynthia. Cynthia started slowly forward. When the Plymouth went over the crest of the hill, it passed from Zoeller's view. At this point, the Plymouth began to skid down Perrin Street. Cynthia's efforts to brake and steer were futile. The Plymouth spun 90 degrees and came to rest in the ditch on the east side of Perrin Street, headed toward the high school. A portion of the left rear of the Plymouth was on the blacktop.

After Cynthia pulled forward, Zoeller also started cautiously forward. When he reached the crest of the hill, he saw the Plymouth in the ditch. His efforts to brake or steer were also futile. The Buick station wagon skidded down the hill. The right front of the station wagon collided with the right side of the Plymouth. The impact caused the Plymouth to slide further down the hill on Perrin Street. The Plymouth stopped in the east ditch approximately 25 feet south of Arlee Street.

Before this first collision, Janet Hoover had gotten out of the Plymouth and was standing beside it. She was carried by the front of the Buick to where the Buick stopped at the intersection of Arlee Street. Cynthia, who had also gotten out of the Plymouth, hurried to the bottom of the hill to help Janet. Apparently Cynthia had got-

ten in front of the Buick before it had fully stopped. It moved forward slightly and knocked Cynthia down. She had gotten up and was again attempting to help Janet when the front of a Thunderbird, driven by defendant Nagle, collided with the rear of the Buick station wagon. As a result of the second collision, the Buick knocked Cynthia several feet into the intersection.

Defendant Kimberly Nagle had approached the high school on Ripa Street. She intended to park in the school parking lot. She turned left on Perrin Street and drove slowly north. When she reached the crest of the hill, she saw the Plymouth in the east ditch and the station wagon at the bottom of the hill. Kimberly's efforts to brake or steer were also unavailing. As a result, the Thunderbird slid down the hill into the rear of the Buick station wagon.

The testimony of the witnesses concerning the actions of the drivers and their ability to control their automobiles after starting down the hill on Perrin Street is remarkably consistent. The following are examples of that testimony.

Passenger Lisa Werkmeister testified that Cindy approached the crest of the hill slowly and as she started down the hill, "[t]he car had slipped, skidded on ice and turned around which made it face toward the school and we were in the ditch." She later added that "Cindy lost control of the steering, she hit a patch of ice and the car turned around and slid into the bank." Cindy testified she approached the crest of the hill at 5–8 miles per hour and when she headed down the hill, she lost control of the car.

Zoeller testified that when he first saw the Plymouth in the ditch, "I had my brakes applied as it hit the crest. I knew after driving it there was an incline, I had my foot on the brake as I approached the crest of the hill. When I went over the crest of the hill I could see that the car was out of control. I, a hundred percent applied my brakes at that time I could realize then it was nothing but a sheet of ice, I had no control over the car."

1. Zoeller was named as a defendant. His motion for a directed verdict at the close of the plaintiffs' evidence was sustained. No appeal has been taken from that order.

Kimberly testified that she approached the crest of the hill very slowly and when she saw the Plymouth and the station wagon she tried to drive around the station wagon. Her car skidded on the ice. "I tried everything. I couldn't move my car." As stated, the plaintiffs recovered their judgments upon the basis of the rear-end doctrine.

The fountainhead of the 'rear-end collision doctrine' in Missouri [footnote omitted] has been said to be *Jones v. Central States Oil Co.*, 350 Mo. 91, 164 S.W.2d 914 (1942). *See Doggendorf v. St. Louis Pub. Serv. Co.*, 333 S.W.2d 302, 305 (Mo. App.1960). *Central States* did not announce its holding as new 'doctrine,' nor was it the first case in which the rear-end theory was discussed. *See Hollensbe v. Pevely Dairy Co.*, 38 S.W.2d 273, 276 (Mo.App.1931); *Jones v. Austin*, 154 S.W.2d 378, 381 (Mo.App.1941). However, *Central States* apparently is the first instance in which a plaintiff submitted the 'rear-end doctrine' in a verdict-directing instruction.

*Mueller v. Storbakken*, 583 S.W.2d 179, 181–82 (Mo. banc 1979).

The doctrine has been summarized in the following language.

The rear-end collision doctrine recognizes that if one has his vehicle in a portion of the highway where he should have it in view of his course, and another traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, proof of the collision under such circumstances makes out a *prima facie* case of specific negligence against the driver operating the overtaking vehicle.

*Ethridge v. Gallagher*, 773 S.W.2d 207, 211 (Mo.App.1989).

The nature of that doctrine of negligence has been repeatedly expressed as follows:

In recent cases, however, the 'doctrine' has been interpreted more broadly and it has been said, 'A rear-end submission may be justified in automobile collision cases under circumstances warranting an inference of defendant's negligence. As said in *Lichtenberg v. Hug*, 481 S.W.2d 527, 529 (Mo.App.1972), "... the doctrine approaches—if it does not reach—that of *res ipsa loquitur* in that under the circumstances in *Jones [v. Central States Oil Co.]* the fact of collision bespeaks the defendant's negligence.' "

*Mueller v. Storbakken*, 583 S.W.2d at 182.

It has also been observed:

Again referring to the rear end collision doctrine, the supreme court has said: 'It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation.' [footnote omitted] *Witherspoon v. Gutierrez*, 327 S.W.2d 874, 878 (Mo.1959).

*Jensen v. Pappas*, 684 S.W.2d 524, 527 (Mo.App.1984). This admonition is recognized by that portion of the Notes on Use to *MAI 3d 17.16* which states that the "rear end doctrine is limited in scope and this instruction should not be used except where the facts show the doctrine is clearly applicable."

*MAI 3d 17.16*, the pattern instruction for submitting the rear-end doctrine, does not require a finding that the vehicle hit from the rear was in a place it had a right to be. However,

... [T]he position of the automobiles is but one, albeit an important one, of the evidentiary matters to be considered by the judge in determining as a matter of law whether the case may properly be submitted under the rear-end collision theory. The judge must decide whether the circumstances as shown by the evidence most favorable to the proponent of the rear-end instruction 'bespeak negligence.' *Lichtenberg v. Hug*, 481 S.W.2d 527, 529 (Mo.App.1972), quoted in *Barlow v. Thornhill*, 537 S.W.2d 412, 421 (Mo. banc 1976). Hence MAI 17.16 properly does not include such language.

*Mueller v. Storbakken*, 583 S.W.2d at 185.

The doctrine is not applicable when a vehicle has turned in front of an oncoming vehicle so as to pose an immediate hazard. *Rosenfeld v. Peters*, 327 S.W.2d 264 (Mo.1959); *Todd v. Presley*, 413 S.W.2d 173 (Mo.1967). Those cases, and other cases holding the doctrine not applicable,

have done so in recognition of the fundamental limitation that "[t]ime and distance available to the overtaking driver are necessary factors in determining whether the fact of collision gives rise to an inference of negligence." *Lichtenberg v. Hug*, 481 S.W.2d at 529. Those factors are critical in establishing the overtaking driver had the ability to avoid a collision after a hazard could be seen. *See Jensen v. Pappas*, 684 S.W.2d at 528. The application of this limitation is demonstrated in *Mueller v. Storbakken*, 583 S.W.2d at 183, in which the court, on the basis of speed and distance, found that the overtaking driver could have avoided the collision and the fact he failed to do so gave rise to an inference of negligence.

In *Cosens v. Smith*, 528 S.W.2d 772 (Mo. App.1975), a defendant's car was knocked forward into the rear of the plaintiff's car. The doctrine was not applicable for a similar reason. "[I]t is equally apparent, with marked cogency, that the evidence utterly failed to demonstrate that defendant Smith, as legally contemplated by the rear-end collision doctrine, 'permitted' his car to run into the rear of the Pontiac." *Id.* at 775.

■ In this case, all the evidence is that when Kimberly reached the crest of the hill and could first see the plaintiff's automobile and the station wagon, she had neither the time nor the distance in which to bring her automobile under control and stop. There is no evidence she "permitted" her automobile to hit the rear of the Zoeller automobile. The circumstances under which the Thunderbird collided with the rear of the Buick station wagon do not bespeak negligence. The plaintiffs' claims were improperly submitted under the rear-end doctrine and the judgments must be reversed.

The furtherance of justice requires a case shall not be reversed without remanding unless the appellate court is convinced the facts are such that a recovery cannot be had. *Nelson v. Grice*, 411 S.W.2d 117, 126 (Mo.1967); *Reed v. Burks*, 393 S.W.2d 377, 380 (Mo.App. 1965). 'It is a settled practice of appellate procedure that a case should not be reversed for failure of proof without remanding, unless the record indicates that the available essential evidence has been fully presented, and that no recovery can be had in any event. This rule is pertinent where the record indicates that other and additional evidence might be adduced in support of plaintiff's action and enable him to make a submissible case.' *Feinstein v. McGuire*, 297 S.W.2d 513, 518 (Mo.1957) (citations omitted). *State ex rel. Div. of Fam. Services v. Standridge*, 676 S.W.2d 513, 517 (Mo. banc 1984).

The judgments are reversed and the case remanded.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

ALMON H. MAUS, Special Judge, concurs in part and dissents in part in separate opinion filed.

BILLINGS, J., not sitting.

ALMON H. MAUS, Special Judge, concurring in part and dissenting in part.

I concur in that part of the principal opinion which reverses the judgments in favor of the plaintiffs. I dissent from that part of the principal opinion that remands the case.

"A submissible case cannot be made against an operator of a motor vehicle by proof that it merely skidded into collision with another vehicle on a highway." *Friederich v. Chamberlain*, 458 S.W.2d 360, 366 (Mo. banc 1970). A submissible case must rest upon antecedent negligence or negligence in failing to control a skidding automobile.

Each of the three drivers involved had driven without incident on the snow and ice-covered streets to reach the school. Each approached the crest of the hill slowly and with caution. Zoeller even had his foot on the brake. Yet when each car crested the hill and reached "the sheet of ice", none of the three drivers had any control of his or her automobile. A plain-

tiff who adopts a theory of recovery that is rejected by an appellate court should have a second chance only when that reversal was not to be reasonably anticipated and the record demonstrates there is evidence available to support a theory upon which recovery is a probability. I am convinced the facts are such that a recovery cannot be had.