Charles HAGEN, et al., Plaintiffs–
Respondents,

v.

The CELOTEX CORPORATION,
Defendant,

Fibreboard Corporation and Owens–
Illinois, Inc., Defendants–
Appellants.

No. 73520.

Supreme Court of Missouri,
En Banc.

Sept. 10, 1991.

Rehearing Denied Oct. 16, 1991.

W. Russell Welsh, Joel A. Poole, Dennis J. Dobbels, Kansas City, for defendants-appellants.

Mark I. Bronson, St. Louis, for plaintiffs-respondents.

BLACKMAR, Judge.

The husband and children of Gloria Hagen seek damages for her death in 1981 from mesothelioma, a rare malignant condition usually associated with exposure to asbestos fibers.[1] *See generally* Stedman's Medical Dictionary (5th Unabridged Lawyers' Edition 1982). Her husband, Charles, had been an asbestos worker since the time of their marriage in 1941, and she was constantly exposed to asbestos dust as she washed his coveralls each Saturday. The defendants concede that asbestos exposure was the underlying cause of her illness and death, but argue that the plaintiffs have not established that defendants' products directly contributed to her disease. Twelve asbestos manufacturers were named as defendants but settlements and bankruptcies

---

1. Plaintiffs' medical expert explained that pleural mesothelioma is a "tumor arising from the lining of the lung."

reduced the number to three by the time of the trial, at which the jury returned a verdict in favor of the plaintiffs for $2,000,-000.[2] Following trial defendant Celotex Corporation was excused from the case after seeking Chapter 11 protection, leaving only defendants Fibreboard Corporation and Owens–Illinois, Inc., as appellants. The Court of Appeals, Eastern District, reversed as to Owens–Illinois but affirmed as to Fibreboard, and, as a part of its initial opinion, transferred the case here because of the importance of the question whether the defendants were entitled to an instructional definition of "unreasonably dangerous." We stand possessed of the entire case, and now reverse and remand for further proceedings, concluding that points other than the one highlighted by the court of appeals are dispositive.

### 1. *Submissibility*

#### a. *As to Owens–Illinois*

Owens–Illinois was the proprietor of the asbestos-containing insulation product "Kaylo" until April 30, 1958, when it sold its Kaylo division to Owens–Corning Fiberglass. It has not manufactured or distributed any product containing asbestos since then. The parties stipulated that Owens–Illinois was not liable for exposure to Kaylo occurring after May 1, 1958.

Plaintiff Charles Hagen presented a list showing his various job locations, the time periods during which he worked at each, and the products used at each job. The exhibit contained only one mention of Kaylo prior to 1958, as follows:

| | | |
|---|---|---|
| 1954, 1959–1971 | Lambert Airport | Pabco Insulation |
| | | Johns–Manville 85% Mag Cement |
| | | *Kaylo* |
| | | Webers 48 |
| | | Eagle–Picher One Cote Cement |
| | | Keene Super Powerhouse Cement |

While the exhibit indicates that Charles Hagen worked with Kaylo at Lambert Airport it does not establish whether this use took place in 1954, when Owens–Illinois manufactured Kaylo, or during the period 1959–1971, when Owens–Corning was the manufacturer.[3]

In an attempt at clarification counsel for the appellants asked Mr. Hagen several questions on cross-examination about his work at Lambert Airport in 1954. He mentioned five products he used during that time but made no mention of Kaylo. Thus, the only evidence connecting him with Kaylo was the ambiguous reference in the list. The exhibit provides no more than equal support for two inconsistent and contradictory propositions and so is insufficient to sustain the plaintiffs' burden of establishing either.[4] The judgment against Owens–Illinois must be reversed.

#### b. *As to Fibreboard*

Asbestos is a mineral product which once was widely used in insulation materials. Over a period of years distressing symptoms appeared in persons who had had substantial exposure to asbestos. Perhaps the most common ailment is asbestosis, which is a nonmalignant scarring of lung tissue. There are also malignant conditions attributable to asbestos exposure, of which mesothelioma is one. Mesothelioma

---

**2.** Judgment was entered for $1,780,000, giving credit for amounts received in settlement from other defendants.

**3.** Owens–Corning was named as a defendant in the appellant's petition but settled before trial.

**4.** *Williams v. Cavender,* 378 S.W.2d 537 (Mo. 1964). *Accord Phillips v. Lively,* 708 S.W.2d 369, 371 (Mo.App.1986), and *Lewis v. Hubert,* 532 S.W.2d 860 (Mo.App.1975).

is actuated by asbestos fibers which make their way to the pleural cavity.

Asbestos exists in different forms and is used in products in different concentrations and consistencies. The most dangerous is crocidolite, which was not used in Fibreboard's products. Those products, rather, contained asbestos in the chrysotile and amosite (amoebocyte) forms. Plaintiffs' experts testified that all asbestos products are dangerous but agreed that the several forms of asbestos have different properties and that crocidolite is the most dangerous.

Charles Hagen testified to having worked with asbestos products of at least nine manufacturers over a period of thirty years. The greater part of his work was with Johns–Manville products; his use of other products is not quantified. Fibreboard argues that the plaintiffs have failed to prove that its products were a substantial causative factor in Mrs. Hagen's illness.

■ The plaintiffs, in order to recover against any defendant, must establish that that defendant's products directly contributed to the death. This requires evidence that the product of each defendant sought to be held liable was a "substantial factor" in causing the harm.[5] In a case of this kind the plaintiff must establish the causal relationship by expert testimony. *Kircher v. Purina Mills, Inc.,* 775 S.W.2d 115 (Mo. banc 1989); *Missouri Farmers Association v. Kempker,* 726 S.W.2d 723 (Mo. banc 1987). Of the plaintiffs' expert witnesses only the treating internist, Dr. Dew, expressed a competent opinion as to the relationship between asbestos products and Gloria's death.[6] He testified that, to a "reasonable degree of medical certainty," dust from products containing asbestos directly caused or directly contributed to her cancer and death. He did not identify particular products at this point. He said that the dosage is not particularly significant in causing mesothelioma and that the material circumstance is the fact of exposure.

Fibreboard used the brand name "Pabco" for its asbestos products. As Dr. Dew concluded his direct examination the following exchange occurred:

Q And in your opinion, is there a difference regarding their causal effect of mesothelioma from one to the other?

A I think there might be some physical difference that most announce that all asbestos can cause problems. As reviewed information, one of the textbooks, Brown's, for all practical purposes all fibers would be viewed the same. I don't think there is good evidence that you can extricate from the type of fibers as to the presentation of the cancer. The problem with it is asbestos is not single standing. Asbestos has many substances, so there's very seldom a pure asbestos anywhere in the products that we have.

At no point was Dr. Dew asked about the peculiar properties of the Pabco products Mr. Hagen used. Nor was his opinion sought as to whether these particular products contributed to the death from mesothelioma. On cross-examination he testified as follows:

Q In fact, I represent a company called Owens–Illinois, Incorporated, and I also represent Fibreboard. Let me ask you this question. You can't sit here and tell us today that Owens–Illinois' fibers hit the pleura and caused the mesothelioma?

A I cannot.

Q And I could ask you the same question about Fibreboard, and your answer would be the same?

A Right.

Thus the record is barren of expert opinion that Fibreboard's product directly contributed to the illness and death. Dr. Dew disavowed a hypothesis of cumulative effect, suggesting instead that Mrs. Hagen probably had a hypersensitivity to asbestos

---

5. *Jackson v. Ray Kruse Const. Co. Inc.,* 708 S.W.2d 664, 669 (Mo. banc 1986); *see also Ricketts v. Kansas City Stockyards Co. of Maine,* 484 S.W.2d 216, 222 (Mo. banc 1972).

6. As is shown below, the testimony of the chemist-toxicologist, Dr. Daugherty, was not received as evidence of the cause of death and is not competent for that purpose.

fibres. His concluding testimony on cross-examination is as follows:

Q You also mentioned about the asbestos floating around in the air in an urban area. Do you agree that the asbestos floating around in the air here in the St. Louis area as opposed to the asbestos that Mrs. Hagen may have gotten from washing her husband's clothes may have caused this mesothelioma?

A Again, I'm not sure which fiber caused this. I think it is possible that asbestos may have played a part. I don't know how you can separate that, under the circumstances. It's there. It's in the air we breathe. We all get it in. So I don't know that the examination is such that you can get down and say this is the one that did it.

MR. WELSH: Thanks, Doctor.

The redirect continued as follows:

Q Doctor, in your opinion what is the most probable and likely cause of her mesothelioma?

A I think it's related to the cleaning of the clothes, the shaking is known to be particularly common and leads to inhalation of a good dose at the time you do that. So that when people shake out their clothes, that's probably when she got a reasonably good dose from inhalation.

■ Thus the plaintiffs have failed to establish any more than that the death was caused by exposure to asbestos dust and that Fibreboard's products may have supplied the fatal exposure. This does not establish causation under the standards of our law. The problem differs only in degree and not in kind from the one we considered in *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984), which holds that the element of causation must be established as to each defendant sought to be held. There we declined to follow decisions of other states that seem to have relaxed the traditional causation standards. *See Schoening v. Claus*, 363 Mo. 119, 249 S.W.2d 361 (1952). The plaintiffs' cited cases do not support a contrary conclusion.

The plaintiffs first rely on *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 173 (Mo.App.1988).

There the plaintiffs claimed that they had been harmed by toxic emissions from a chemical plant. The defendants argued that the evidence was not sufficient to show that such damage as occurred was caused by the emissions from the plant, to the exclusion of other causes. The plaintiffs' evidence consisted of analysis of the emissions, comprehensive biochemical tests, and an opinion from a qualified physician that inhalation of the emissions, to a reasonable medical certainty, caused or contributed to the plaintiffs' symptoms. Competent expert testimony singled the defendant out as the responsible party.

In *Abbott v. Babcock & Wilcox Company*, 905 F.2d 201, 203 (8th Cir.1990), the plaintiff's expert was expressly asked whether exposure to the particular defendant's products "had been a contributing factor to the lung cancer death of Mr. Abbott," and he responded in the affirmative. To the defendant's suggestion that the witness had not testified in terms of "substantial factor" the court responded that the jury could have found that the contributing factor was substantial. The record in that case supplied evidence which is absent here.

*Borel v. Fibreboard Paper Products Corporation*, 493 F.2d 1076 (5th Cir.1973), is the seminal case concerning liability of manufacturers and sellers of asbestos. It contains a valuable exposition of the entire problem. The case was brought on a failure to warn theory. The evidence showed that the plaintiff was "exposed to the products of all of the defendants on many occasions. ...;" that "the effect of exposure to asbestos dust is cumulative, ...;" and that "even the most recent exposures could have added to or accelerated Borel's overall condition." *Id.* at 1094.

In *Roehling v. National Gypsum Co.*, 786 F.2d 1225 (4th Cir.1986), the evidence showed that the plaintiff's husband, who had died of mesothelioma, had worked for a substantial period in an area in which asbestos products supplied by the two defendants were used and was exposed to asbestos dust during that time. The medical evidence pinpointed these two products

as causative factors. The deceased was a pipefitter, not an asbestos worker, and the evidence focused on his exposure to the defendants' products while installing pipes in which asbestos was used for insulation. The reviewing court held that the showing was sufficient to take the case to the jury, and that the trial court had erred in directing a verdict.

In *Brisboy v. Fibreboard Corporation*, 429 Mich. 540, 418 N.W.2d 650 (1988), there was evidence of a six month exposure to a single defendant's product and also the finding of residual asbestos in lung tissue. The employee had died of lung cancer and the defense sought to establish heavy smoking as the cause. The court held that the evidence supported the finding that asbestos exposure was a contributing cause.

The opinion in *Migues v. Fibreboard Corporation*, 662 F.2d 1182 (5th Cir.1982), does not detail the plaintiff's evidence, but puts much stress on the absence of contradiction of the evidence of causation. The ultimate holding was that the trial court erred in holding that asbestos products were dangerous as a matter of law and in directing a verdict of liability. Thus, a new trial was necessary. We do not find conflict between this case and the others just discussed.

We believe that justice requires that the plaintiffs be given the opportunity to supply the deficiencies we find in their proof. We prefer reversal and remand to outright reversal, as we are not convinced that the plaintiff could not make a case on retrial. *Kaufmann v. Nagle*, 807 S.W.2d 91, 95 (Mo. banc 1991); *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989); *Morris v. Shell Oil Company*, 467 S.W.2d 39 (Mo.1971). Questions about proof of causation when products of numerous manufacturers are involved have not been well developed in our jurisprudence, and there may be a lack of consensus among courts and lawyers.[7] The plaintiffs should have the opportunity to introduce evidence about the causative effects of exposure to dust from the specific prod-

ucts of Fibreboard that Charles Hagen used, over the period of time they were used.

Inasmuch as the case must be tried again we consider other points raised on appeal which are likely to recur.

### 2. *Alleged Instructional Error*

#### (a) *"Clarification" of Verdict Director*

The verdict director against Fibreboard reads as follows:

Your verdict must be for plaintiffs against defendant Fibreboard Corporation if you believe:

First, plaintiffs are the husband and children of Gloria Hagen, and

Second, defendant Fibreboard Corporation sold insulation products containing asbestos in the course of its business, and

Third, the insulation products containing asbestos were then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Fourth, the insulation products containing asbestos were used in a manner reasonably anticipated, and

Fifth, such defective condition as existed when the insulation products containing asbestos were sold either directly caused or directly contributed to cause the death of Gloria Hagen.

The court also gave a converse instruction at the request of Fibreboard, reading as follows:

Your verdict must be for defendant Fibreboard Corporation unless you believe:

First, defendant Fibreboard Corporation's insulation products containing asbestos were in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Second, such defective condition as existed when the insulation products containing asbestos were sold either directly caused or directly contributed to cause the death of Gloria Hagen.

---

7. *See Rosenberg, "The Causal Correction in Mass Exposure Cases: A 'Public Law' Vision of the Tort System,"* 97 Harv.L.R. 851 (1984); *Farber, "Toxic Causation,"* 71 Minn.L.R. 1219 (1987).

The court refused an instruction requested by Fibreboard and Owens–Illinois, described as a "clarifying" instruction and reading as follows:

> There may be more than one substantial cause of an injury and the existence of other causes does not preclude plaintiffs from recovering if you believe defendants' products were one of the substantial causes of injury. However, for there to be a recovery against a defendant, you must find that Gloria Hagen's exposure to that defendant's product was a substantial contributing factor.

■ The defendants argue that, without the refused instruction, the jury might assume that it could impose liability without finding that Fibreboard's products contributed to Mrs. Hagen's fatal illness. We do not believe that the verdict director, read with the converse, is subject to this criticism. The verdict director might possibly be clearer, especially in a case in which identical instructions are used for several defendants, if the third, fourth and fifth paragraphs were modified, as the defendants suggest, so as to read, "the insulation products containing asbestos sold by Fibreboard Corporation ..." Counsel who really think that an instruction, apparently proper in form, is ambiguous or confusing should point the problem out, and then *opposing counsel should be willing to make clarifying modifications without the need for a ruling by the court.*

■ The defendants' requested instruction is objectionable, furthermore, in speaking in terms of "substantial causes" and "substantial contributing factor." Our cases require a showing that an alleged contributing cause is a "substantial factor." [8] This language, however, provides a standard for the trial court in the exercise of its duty to determine whether a submissible case has been made and not a formula for instructing the jury. MAI 19.-01, in the form here applicable, allowed instruction in terms of "directly caused or directly contributed to cause." [9] Only confusion would result if an additional formulation were required.

### (b) *Definition of "Unreasonably Dangerous"*

Fibreboard and Owens–Illinois requested an instruction as follows:

> The phrase "unreasonably dangerous" as used in this instruction means that the utility or usefulness of the product was outweighed by its risks.

The court of appeals found that this instruction was not authorized under our law, but transferred the case here because of the importance of the point. Because of the state of the record we are unable to add very much to the discussion in *Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 376–8 (Mo. banc 1986), and *School District of Independence v. U.S. Gypsum,* 750 S.W.2d 442 (Mo.App.1988).

The defendants argue for a "risk-benefit" instruction. The Restatement of Torts suggests that a risk-benefit analysis is especially appropriate in cases involving critical medical products which may provide the only available therapy for serious conditions but which may have serious side effects. Restatement (Second) of Torts § 402A comment k. *See Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374 (1984). The concept might also be applicable to useful products which are not generally considered unsafe, when issues are presented as to alternative methods of design and the adequacy of warnings. *O'Brien v. Muskin Corporation,* 94 N.J. 169, 463 A.2d 298 (1983); 3 Devitt, Black-

---

8. See cases cited in footnote 4.

9. The 1986 revision allows plaintiffs to opt for one of the following paragraphs where multiple causes of damage exist:

> Third, such negligence directly caused or directly contributed to cause damage to plaintiff.
>
> Third, such negligence either directly caused damage to plaintiff or combined with the [acts of (*here describe another causing damage*)] [condition of the (*here describe product*)] to directly cause damage to plaintiff.

MAI–3rd 19.01 [1986 Revision]. This instruction can apply to wrongful death cases by substituting the words "the death of" for "damage to." *See Honey v. Barnes Hospital,* 708 S.W.2d 686, 693 (Mo.App.1986).

mar & Wolff, *Federal Jury Practice and Instructions,* 4th Ed. (1987), § 82.09, p. 233.

■ This record, however, presents no issue of weighing benefits against dangers. Although asbestos once was widely used as an insulating material it is now considered so dangerous that insulation products containing asbestos have not been marketed since the early 1970s and widespread asbestos removal projects have been undertaken. Fibreboard made no attempt to show that its product had such utility that it could be rendered reasonably safe by an adequate warning. *See School District of Independence v. U.S. Gypsum,* 750 S.W.2d at 454, in which no error was found in rejecting "comparative risk assessment" testimony, for want of a proper offer of proof. Fibreboard argued instead that its product was not unreasonably dangerous, but the jury did not agree. The evidence clearly established the dangers of exposure to asbestos. *See School District of Independence v. U.S. Gypsum,* 750 S.W.2d 442 (Mo.App. 1988); *Borel v. Fibreboard Paper Products Corporation,* 493 F.2d 1076 (5th Cir. 1973).

■ No other instruction defining "unreasonably dangerous" was requested, and it would not be appropriate to comment further. *See Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 389 (Mo. banc 1986) (Blackmar, J. concurring), indicating that there may be open questions under our law about defining this term. We cannot say the existing case law and the present MAI instructions answer all possible legal questions which may arise in products liability cases. A party who believes that additional instructions are legally appropriate must request a correct instruction and must develop an evidentiary record in support.

### (c) *Mitigating Circumstances*

Fibreboard and Owens–Illinois offered the following instruction:

If you find in favor of plaintiffs, then you must award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any damages you believe plaintiffs sustained as a direct result of the fatal injury to Gloria Hagen. If your verdict is for plaintiffs, then in assessing damages you may take into consideration any mitigating circumstances attendant upon the fatal injury.

You must not consider grief or bereavement suffered by reason of the death.

The trial court refused the instruction and explicitly cautioned the defendants about any suggestion of a "state of the art" argument, pointing to our opinion in *Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434 (Mo. banc 1984).

*Elmore,* however, was not a wrongful death case. The wrongful death statute, § 537.090, RSMo 1986, expressly provides that

The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts ...

■ Actions for wrongful death are purely statutory. *Glick v. Ballentine Produce, Inc.,* 396 S.W.2d 609, 613–14 (Mo. 1965). The governing statutes depart from the common law in permitting the actual damages to be increased on account of aggravating circumstances or reduced on account of mitigating circumstances, if supported by the evidence. The rather sparse case law on mitigating circumstances indicates that the jury has broad discretion in determining the matters constituting mitigation. *Hertz v. McDowell,* 214 S.W.2d 546, 550 (Mo. banc 1948); *Patison v. Campbell,* 337 S.W.2d 72, 75 (Mo.1960); *May v. Bradford,* 369 S.W.2d 225, 229 (Mo. 1963). The statute entitles the defendants to an instruction which would authorize the jury to consider mitigating circumstances. The requested instruction conforms to MAI 5.01 and 6.01.

The defendant Fibreboard might undertake to show that, at the time it sold the products on which Charles Hagen worked, it believed that they were safe, beneficial, and useful as insulating materials. It would not be appropriate to venture an opinion at this point as to the precise showing which would justify an instruction on

mitigation. The trial judge made it clear that he would not allow any development of a state of the art argument, and so further pursuit on the point would have been futile. The parties may make such proffers as they deem appropriate on remand.

■ The plaintiffs exercised their option under MAI 5.01 of not requesting an instruction on aggravating circumstances.[10] This tactical decision does not preclude the defendants from requesting an instruction on mitigation.

### 3. *Expert Testimony*

Dr. Kenneth E. Daugherty, an expert chemist and toxicologist, testified for the plaintiffs about the harmful properties of asbestos. The defendants objected, asserting that he was not qualified to testify about the causal relationship between the inhalation of asbestos dust and Mrs. Hagen's illness. The trial court ruled as follows:

> I find him qualified to give an opinion as to whether asbestos constitutes the health hazard, and so you understand, I'm not going to permit him to testify to the opinion as to the cause of the cancer or anything further than that because he is not a medical doctor.

■ The plaintiffs are obliged to prove that "the insulation products containing asbestos were then in a defective condition, unreasonably dangerous." The admission of the testimony for the purposes indicated by the trial judge was within his discretion. *See Butcher v. Main*, 426 S.W.2d 356, 359 (Mo.1968); *Kummer v. Cruz*, 752 S.W.2d 801, 808 (Mo.App.1988).

The judgment against Owens–Illinois is reversed and the case is remanded with directions to enter judgment in favor of that defendant. The judgment against Fibreboard is reversed and the case is remanded for a new trial.

RENDLEN and HOLSTEIN, JJ., and McHANEY and HIGGINS, Senior JJ., concur.

ROBERTSON, C.J., concurs in part and dissents in part in separate opinion filed.

COVINGTON, J., concurs in part and dissents in part in concurring in part and dissenting in part opinion of ROBERTSON, C.J.

BENTON, J., not participating because not a member of the Court when case was submitted.

ROBERTSON, Chief Justice, concurring in part and dissenting in part.

I concur wholeheartedly in the principal opinion's conclusions that the plaintiffs failed to make a submissible case against Owens–Illinois and Fibreboard. However, I believe the principal opinion errs in remanding the case against Fibreboard for a new trial. A remand in this case is not required.

The plaintiffs filed their case May 18, 1982, naming 17 defendants, twelve of whom were involved in the mining, manufacturing, importing, converting, distributing, and sales of asbestos or asbestos products. The remaining defendants were employers of Charles Hagen, whose contracts provided employment for Hagen, but also caused him to come into contact with asbestos products. As the principal opinion points out, settlements, which amounted to $220,000, and bankruptcies reduced the number of defendants at trial to three: Owens–Illinois, Celotex and Fibreboard. Following the Celotex bankruptcy, only Owens–Illinois and Fibreboard remained "live" defendants. Plaintiffs' counsel handled this case with diligence, aggressively pursuing the defendants and preparing the plaintiffs' case.

The principal opinion announces no new theory of law which operates to reverse plaintiffs' judgment in this case. The cases upon which the plaintiffs rely in this Court, and of which we assume they were aware

---

**10.** The cases recognize that an instruction on aggravating circumstances is appropriate only if supported by evidence. *Guthrie v. Missouri*

*Methodist Hospital*, 706 S.W.2d 938 (Mo.App. 1986).

as they prepared for their 1989 trial, chart a course for proving causation and liability on the part of the defendants. That charted course is not difficult to understand. Yet, despite this map, plaintiffs' evidence, in the words of the principal opinion, "did not establish causation under the standards of our law."

In my view, remand under the circumstances of this case would be appropriate under two circumstances. First, remand is appropriate when the legal theory under which a plaintiff brings its case is changed by a judicial opinion and the record demonstrates there is evidence available to support a theory upon which recovery is a probability under the new rule announced by the court. As the majority opinion aptly shows, the plaintiffs did not prove causation under the existing law. No new theory of law is enunciated by the principal opinion.

Second is the rule followed in *Kaufmann by Kaufmann v. Nagle*, 807 S.W.2d 91, 95 (Mo. banc 1991).

> It is a settled practice of appellate procedure that a case should not be reversed for failure of proof without remanding, unless the record indicates that the available essential evidence has been fully presented, and that no recovery can be had in any event. This rule is pertinent where the record indicates that other and additional evidence might be adduced in support of plaintiff's action and enable him to make a submissible case.

[Citations omitted.] We can speculate that plaintiffs might be able to find an expert who can testify to the missing causation. But under the *Kaufmann* rule, the *record in the case* itself must provide the indication that "available essential evidence" was not presented. *On the record* in this case, it appears that the available essential evidence has been fully presented. Further, the *record* does not "indicate that other and additional evidence might be adduced in support of plaintiff's action."

The principal opinion cites three cases in support of its position that remand is required. *Kaufmann;* 807 S.W.2d at 951; *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989); and *Morris v. Shell Oil Co.*, 467 S.W.2d 39, 43 (Mo.1971). For the reasons previously stated, *Kaufmann* does not support the principal opinion's remand.

In *Moss*, the plaintiff slipped and fell on a puddle in the defendant's parking lot. This Court reversed the judgment in favor of the plaintiff, because she failed to show that the defendant should have discovered the puddle. The Court's remand was predicated on two theories: First, that this Court announced a broadening of the rules governing submissibility in slip and fall cases under *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. banc 1989), which was decided contemporaneously with *Moss*. Second, that the Court believed that the *record*—that is a deposition taken in the case and filed with the trial court—showed that plaintiff could have introduced evidence that store employees regularly went into the parking lot and were thus on notice of the dangerous condition.

*Morris* was a product liability/failure to warn case. The plaintiff was injured by her use of a chemical produced by Shell and distributed by another party. There was evidence that the distributor failed to warn the plaintiff of the hazard associated with the chemical in question. The plaintiff did not offer evidence at trial as to whether Shell gave any warning to the distributor. The court remanded on its speculation outside the record that "[i]t would appear that some evidence on this matter is available." *Id.* at 43. In view of *Kaufmann*, the court's decision in *Morris* is incorrect.

On the record in this case, there is no indication that plaintiffs had available evidence to support their theory of causation under Missouri law. Nor does this Court announce new law. The plaintiffs had every opportunity to prove their case against Fibreboard and should have been well-advised of the requirements of Missouri law as to causation prior to court. Yet, plaintiffs failed to make their case. The rules of law this Court has followed call for the judgment against Fibreboard to be reversed outright.

I respectfully dissent as to the remand of the plaintiffs' case as to Fibreboard.