# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 98-1302

———————

| | | |
|---|---|---|
| Hazel Chism, Patricia Meier, | * | |
| Mark Chism, Kent Chism, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| W.R. Grace & Company, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: September 21, 1998
Filed: October 21, 1998

———————

Before BOWMAN, Chief Judge, WOLLMAN, and KELLY,[1] Circuit Judges.

———————

BOWMAN, Chief Judge.

Glenwood Chism, an employee of A.P. Green Refractories Company ("A.P. Green"), died from malignant mesothelioma, a cancer affecting the lining of the lungs associated with exposure to asbestos. The widow and children of Mr. Chism ("appellants") sued numerous manufacturers of asbestos-containing products, including

———————

[1]This opinion is fully consistent with the views expressed by Judge Kelly during the panel's conference following the oral argument of the case. Because of illness, Judge Kelly is presently unable to review the opinion, which is filed without awaiting his express concurrence to avoid undue delay.

W.R. Grace & Company ("Grace"), for wrongful death, negligence, and strict liability, asserting that Mr. Chism contracted mesothelioma through exposure to their products during his employment with A.P. Green. The District Court[2] granted summary judgment in favor of all manufacturers on the ground that appellants had failed to establish a causal connection between the manufacturers' products and the injury to Mr. Chism. Appellants appeal only the grant of summary judgment in favor of Grace. We affirm.

## I.

Mr. Chism worked for A.P. Green from 1952 until 1985. Mr. Chism testified in his deposition that he worked as a mixing operator and bagger in the specialties department at A.P. Green's Mexico, Missouri plant from 1952 to 1955 and again from 1957 to 1964. As a mixing operator, Mr. Chism would dump raw ingredients from overhead bins into a cart according to a recipe. Mr. Chism testified that he also would hand-scoop certain materials, such as raw asbestos, into the mixture. After a product was mixed, it was fed into a special machine for bagging. During the mixing and bagging process, Mr. Chism was exposed to large amounts of dust from raw asbestos, vermiculite, and other materials. Mr. Chism testified that he performed various other duties for A.P. Green after 1964, although he occasionally returned to the specialties department for brief periods of time. Mr. Chism left the company on December 31, 1985, and died on June 7, 1994.

Mr. Chism testified that one of the materials he added to mixtures when he worked in the specialties department was Zonolite vermiculite. The Zonolite Company originally manufactured Zonolite vermiculite and Grace continued to manufacture the product after it purchased the Zonolite Company in April 1963. Vermiculite is a

___

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

mineral that is mined, processed, heated (expanded), and sold for a variety of uses. Raw vermiculite ore sometimes contains asbestos contaminants in the form of tremolite. According to Grace, processing and expanding the vermiculite can remove virtually all asbestos contaminants although a trace amount may remain.

## II.

We review the District Court's grant of summary judgment de novo. See Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998). We must view the facts in the light most favorable to appellants, giving them the benefit of all reasonable inferences to be drawn from the underlying facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). We will affirm the grant of summary judgment if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once Grace meets its initial burden of showing there is no genuine issue of material fact, appellants may not rest upon the allegations of their pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. See Fed. R. Civ. P. 56(e). Appellants "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586; they must show there is sufficient evidence to support a jury verdict in their favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

This is a diversity action in which Missouri law applies. Appellants have asserted claims for negligence, strict liability, and wrongful death. In a negligence claim, Missouri law requires a plaintiff to establish a causal connection between the defendant's conduct and the plaintiff's resulting injury. See Kraus v. Celotex Corp., 925 F. Supp. 646, 651 (E.D. Mo. 1996) (citing Zafft v. Eli Lilly & Co., 676 S.W.2d 241, 244 (Mo. 1994)). A causal connection between the defendant and the injury-producing agent must also be established in strict liability claims. See id. (citing Zafft, 676 S.W.2d at 244). To establish the necessary causal connection, appellants must prove both causation in fact ("but for" causation) and proximate causation. See Paull v. Shop 'N Save Warehouse Foods, Inc., 890 S.W.2d 401, 403 (Mo. Ct. App. 1995). The Missouri Supreme Court has stressed that "but for causation" is an absolute minimum because it establishes causation in fact. See Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. 1993).

In wrongful death cases based on asbestos exposure, Missouri law requires the plaintiff to establish that each "defendant's products directly contributed to the death." Kraus, 925 F. Supp. at 651 (citing Hagen v. Celotex Corp., 816 S.W.2d 667, 669 (Mo. 1991)). The "directly contributed" standard requires evidence, in the form of expert testimony, "that the product of each defendant sought to be held liable was a 'substantial factor' in causing the harm." Hagen, 816 S.W.2d at 670. "Substantial factor" means the manufacturer's conduct "had such an effect that reasonable people would regard it as the cause of harm." Ray v. Upjohn Co., 851 S.W.2d 646, 654 (Mo. Ct. App. 1993). If appellants can "only allege that, even when all of the tort-feasors are taken together, the negligence of the respondents might have contributed to the death . . . the petition fails to allege facts that indicate that respondents' negligence was a substantial factor in causing the death." Wollen v. DePaul Health Ctr., 828 S.W.2d 681, 683 (Mo. 1992).

Appellants misread Callahan when they suggest the Missouri Supreme Court rejected the substantial factor test in favor of a "directly caused or directly contributed

to cause" test. The two tests are not mutually exclusive. In fact, as <u>Hagen</u> explained, "directly contributed" is shown by establishing that each defendant's product was a substantial factor in causing the harm. <u>See</u> <u>Hagen</u>, 816 S.W.2d at 673. Appellants' suggested test arises from Missouri's standard jury instruction in which the jury is instructed that the defendant's conduct must "directly cause" or "directly contribute to cause" plaintiff's injury. <u>Callahan</u>, 863 S.W.2d at 863 (citing MAI [Missouri Approved Instruction] 19.01). This jury instruction is intended to encompass the terms "proximate cause," "but for causation," and "substantial factor." <u>See id.</u> The Missouri Supreme Court has noted that the "substantial factor" language provides the standard for determining whether a submissible case has been made, while "directly caused or directly contributed to cause" is the proper language for a jury instruction. <u>See</u> <u>Hagen</u>, 816 S.W.2d at 673.

Whether the test is phrased as "substantial factor" or as "directly caused or directly contributed to cause," appellants have failed to produce sufficient evidence to present a genuine issue of material fact regarding causation. The present case is analogous to <u>Hagen</u>, which involved a wrongful death action brought against twelve asbestos manufacturers by the survivors of a woman who contracted mesothelioma from regularly washing her husband's asbestos-covered overalls. The Missouri Supreme Court found the woman's survivors had failed to establish anything other than "the death was caused by exposure to asbestos dust" and a particular manufacturer's "products may have supplied the fatal exposure." <u>Id.</u> at 671. The record did not contain any expert testimony that the manufacturers' products "directly contributed to the illness and death," and thus did "not establish causation under the standards of [Missouri] law." <u>Id.</u> at 670-71.

As in <u>Hagan</u>, appellants have failed to produce expert testimony that asbestos from Grace's products directly contributed to cause Mr. Chism's death. The testimony of appellants' expert, Dr. Carlos Bedrossian, is evidence that asbestos caused Mr. Chism's mesothelioma. Dr. Bedrossian testified in his deposition that one asbestos

fiber can start the cancer process. Appellants thus assert that one fiber of vermiculite contaminated with tremolite (an asbestos element) could have caused Mr. Chism's death. Although appellants presented substantial evidence through deposition testimony that Mr. Chism was exposed to Zonolite vermiculite dust,[3] they failed to present evidence that the final Zonolite vermiculite product contained any asbestos. Nor have appellants presented evidence that any asbestos possibly contained in the vermiculite could be released as inhalable fibers. Thus there is no evidence that Grace's products could have supplied the fatal exposure.

Harashe v. Flintkote Co., 848 S.W.2d 506 (Mo. Ct. App. 1993), demonstrates how an asbestos plaintiff can meet the causation requirements. In Harashe, a plumber diagnosed with mesothelioma had been exposed to heavy doses of Zonolite asbestos on at least two occasions and lesser doses on many other occasions. The plumber, suing only the manufacturer of Zonolite, presented evidence that his exposure to other asbestos products was limited and that such exposure was not in circumstances where respiration of dust would occur and was not to asbestos types that produce mesothelioma. In contrast, substantial evidence exists that Mr. Chism frequently worked with large quantities of raw asbestos, in situations where respiration of asbestos dust would occur. In fact, Dr. Bedrossian admitted that Mr. Chism's tremendous exposure to raw asbestos alone was sufficient to cause his mesothelioma. Therefore, appellants have failed to present evidence that "but for" his exposure to Zonolite, Mr. Chism would not have contracted mesothelioma.

Although Missouri has not expressly defined the proper standard for proximate causation in asbestos cases beyond stating the substantial factor test, "[t]he Eighth Circuit and a majority of courts have adopted the 'frequency, regularity, and proximity'

---

[3]For this discussion of causation, we assume that Grace is liable as a successor in interest to the Zonolite Company and thus Mr. Chism's entire exposure to Zonolite vermiculite is attributable to Grace.

standard of proximate causation" to determine if a particular defendant's product is a substantial factor in causing a plaintiff's injury in an asbestos case. <u>Kraus</u>, 925 F. Supp. at 651-52. This standard has four parts: (1) exposure to a particular product; (2) on a regular basis; (3) over an extended period of time; and (4) in proximity to where the plaintiff actually worked. <u>See id.</u> at 652.

As to proximate causation, appellants have failed to satisfy the "frequency, regularity, and proximity" standard. Although appellants may have shown that Mr. Chism was exposed to Zonolite vermiculite on a regular basis during his years in the specialties department, appellants have failed to establish that Zonolite vermiculite contained any asbestos which could have caused the asbestos-related form of cancer from which Mr. Chism died.

Appellants' assertion that their experts would testify about the concentration of asbestos in Zonolite vermiculite and would link Mr. Chism's death to his exposure to Zonolite is insufficient to overcome the grant of summary judgment. Appellants had had ample time and opportunity to develop supporting expert testimony, by deposition or affidavit, to show that a genuine issue of material fact existed when they submitted their response to Grace's summary judgment motion.

The evidence presented by appellants in connection with their motion for reconsideration[4] also fails to establish that Grace's products directly contributed to cause Mr. Chism's death. The evidence shows that some of the vermiculite deposits

---

[4]Motions for reconsideration cannot be used to introduce new evidence that could have been produced while the summary judgment motion was pending. <u>Hagerman v. Yukon Energy Corp.</u>, 839 F.2d 407, 414 (8th Cir. 1988). The evidence presented by appellants with their motion for reconsideration appears to have been available when they responded to Grace's summary judgment motion. Thus, such evidence is not properly before us. We discuss this evidence only to show that even if it were properly before us, it would not change the outcome of the case.

mined by Zonolite, and later Grace, have an asbestos contaminant (tremolite) as part of the ore. However, Mr. Chism was not exposed to any raw vermiculite. In fact, Grace's position is that the separating, processing, and expanding operations performed to convert the vermiculite ore to a finished expanded vermiculite remove any asbestos contamination except for small amounts of trace elements which occasionally may remain. Appellants have not come forward with evidence to refute Grace's evidence on this point and have not presented any evidence that even a trace of asbestos contaminants actually remained in the finished product with which Mr. Chism worked.

### III.

Appellants also appeal the District Court's determination that Grace did not succeed to the liabilities of the Zonolite Company. In Part II, supra, we concluded that even assuming Grace is responsible for Mr. Chism's entire exposure to Zonolite vermiculite, appellants have failed to establish a genuine issue of material fact regarding causation. Therefore, we need not reach this issue.[5]

The judgment of the District Court is affirmed.

---

[5]We note this issue has arisen previously, with differing results. On February 2, 1993, the Missouri Court of Appeals found Grace to be a successor in interest to the Zonolite Company. See Harashe, 848 S.W.2d at 509. On February 16, 1993, a United States district court reached the opposite result and found Grace is not a successor in interest to Zonolite. See East Prairie R-2 School Dist. v. U.S. Gypsum Co., 813 F. Supp 1396, 1402 (E.D. Mo. 1993). Later that same year, another United States district court followed Harashe and found Grace to be a successor in interest to Zonolite. See T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn., 840 F. Supp. 676, 678-79 (D. Minn. 1993).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.