

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| VINCENT HEGGER (DECEASED), | ) | ED106278 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| VALLEY FARM DAIRY COMPANY, | ) | |
| | ) | FILED: May 21, 2019 |
| Respondent. | ) | |

## Introduction

In 2013, after negotiations and an agreement with various interest groups, including employer and employee representatives, the Missouri legislature enacted and amended certain provisions of Chapter 287, Missouri's Workers' Compensation Law. The goal of these statutory revisions was to make Missouri's Workers' Compensation Law the exclusive remedy for employee claims of occupational disease due to toxic exposure and thereby reduce the potential significant civil liability for employers by moving exposure cases from the circuit court to the Division of Workers' Compensation.

Vincent Hegger (Hegger) died in 2015 from mesothelioma caused by exposure to asbestos while working at Valley Farm Dairy Company (Valley Farm). Prior to his death,

1

Hegger filed a claim for workers' compensation benefits. Hegger and then his children (Claimants) sought workers' compensation benefits, pursuant to one of the amended statutes, Section 287.200.4, effective January 1, 2014.[1] The Administrative Law Judge (ALJ) determined that a company that is no longer in business, such as Valley Farm, cannot "elect to accept" coverage under this statute's language and thus Claimants were not entitled to benefits. The Labor and Industrial Relations Commission (Commission) affirmed the ALJ's decision. We hold that Claimants are entitled to benefits under Section 287.200.4 and reverse the Commission's decision. The cause is remanded for the Commission to determine which insurer is liable under the last exposure rule.

## Background

From 1968 to 1984, Hegger worked for Valley Farm performing maintenance duties. Hegger's duties included maintaining industrial equipment, such as ammonia compressors, boilers, and fireboxes. Much of this work created asbestos dust which Hegger inhaled. Hegger's work for Valley Farm was the last time he worked with or was exposed to asbestos. Amerisure Insurance Company provided Valley Farm with workers' compensation coverage from October 17, 1983 until October 17, 1984, and Travelers Indemnity Company of America provided coverage from October 17, 1984 until October 17, 1985. Valley Farm has not been in "existence" since 1998.

In March of 2014, Hegger's physician diagnosed Hegger with mesothelioma that was caused by asbestos exposure. Hegger filed his claim for workers' compensation benefits in March of 2014. Hegger gave a deposition in May of 2015. On June 17, 2015, Hegger died as a result of complications from mesothelioma.

---

[1] All statutory references are to RSMo. (2016) unless otherwise indicated.

2

After an evidentiary hearing, the ALJ ruled: (1) Hegger's exposure to asbestos at work was the prevailing factor for Hegger's diagnosis of mesothelioma; (2) Hegger was last exposed to the hazards of asbestos working for Valley Farm; and (3) Claimants did not meet their burden of proving entitlement to the benefits provided in Section 287.200.4(3) because Valley Farm was not in existence as of January 1, 2014, and therefore could not elect to accept coverage under Section 287.200.4(3)(a). The ALJ did not award Claimants any benefits. The Commission affirmed and incorporated the ALJ's decision. Claimants appeal.

## Points on Appeal

Claimants argue the Commission erred because (1) Valley Farm elected to accept liability for the benefits provided in Section 287.200.4(3) under strict construction of that subsection, and (2) Valley Farm was not required to provide the Division of Workers' Compensation with notice of an election to accept liability for the benefits provided in Section 287.200.4(3).

## Standard of Review

This Court's standard of review for the Commission's decision is set forth in Section 287.495.1. On appeal, the court may modify, reverse, remand for rehearing, or set aside the Commission's decision only on the following grounds: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient, competent evidence in the record to warrant the making of the award. Further, if the Commission incorporates the Administrative Law Judge's decision, we will consider it as part of the Commission's decision. Maryville R-II School Dist. v. Payton, 516 S.W.3d 874, 880 (Mo. App. W.D. 2017).

An appellate court defers to the Commission's findings of fact, the credibility of witnesses, and the weight given to conflicting evidence. Malam v. Mo. Dept. of Corrections, 492 S.W.3d

3

926, 928 (Mo. banc 2016). However, decisions involving statutory interpretation are reviewed de novo. White v. Conagra Packaged Foods, LLC, 535 S.W.3d 336, 338 (Mo. banc 2017).

## Discussion

## Mesothelioma

It is well known that mesothelioma is a serious and often fatal disease. Mesothelioma is a malignant condition attributed to asbestos exposure. Hagen v. Celotex Corp., 816 S.W.2d 667, 669 (Mo. banc 1991). "Over a period of years distressing symptoms appeared in persons who had had substantial exposure to asbestos." Id. Mesothelioma "is actuated by asbestos fibers which make their way to the pleural cavity." Id. The latency period can be thirty years or longer.

## Missouri's Worker's Compensation Law

Missouri voters passed the original version of the Missouri Workers' Compensation Law (Act) in 1926. The passage of the Act constituted what is referred to as the "bargain" between employers and employees. Zueck v. Oppenheimer Gateway Props., Inc., 809 S.W.2d 384, 388 (Mo. banc 1991). The Act "is the product of a trade-off: the employer forfeits [its] common law defenses to suits against [it] [the employer] for [its] employees' injuries and assumes automatic liability; the employee forfeits [the] right to a potentially lucrative common law judgment in return for assured compensation." Id. In 1931, the legislature amended the Act to provide optional coverage for occupational diseases. Section 287.020 RSMo. (1949). In 1974, the legislature made coverage for occupational diseases mandatory. Section 287.110.2 RSMo. (1978). Prior to 2005, Section 287.800 RSMo. (2000) stated that "[a]ll of the provisions of (the workers' compensation law) shall be liberally construed with a view to the public welfare." State ex rel. KCP&L Greater Mo. Operations Co. v. Cook, 353 S.W.3d 14, 22 (Mo. App. W.D. 2011). In 2005, the legislature amended Section 287.800 to require strict construction of workers' compensation law. The

4

legislature also amended Section 287.120.2 RSMo. Cum. Supp. (2007), removing occupational disease claims from the workers' compensation exclusivity provisions. Thereafter, this Court and the Western District held that under strict construction, occupational diseases were no longer subject to workers' compensation exclusivity provisions and a claimant could bring common law claims in the circuit court.[2] Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293, 299 (Mo. App. E.D. 2013) (holding that plaintiffs' injuries were not the result of an "accident" as that term is defined in section 287.020.2 RSMo. Cum. Supp. (2011), and therefore employees claiming work-related occupational disease were not limited to the remedies provided by Chapter 287); Cook, 353 S.W.3d at 30. In 2013, the legislature repealed, enacted, and amended numerous sections in Chapter 287.

One of these Sections 287.200, effective January 1, 2014, addresses occupational diseases due to toxic exposure which results in permanent and total disability or death.

Section 287.200.4 provides:

> For all claims filed on or after January 1, 2014, for occupational diseases due to toxic exposure which result in a permanent total disability, or death, benefits in this chapter shall be provided as follows:
>
> (1) Notwithstanding any provision of law to the contrary, such amount as due to the employee during said employee's life as provided for under this chapter for an award of permanent total disability and death, except such amount shall only be paid when benefits under subdivision (2) and (3) of this subsection have been exhausted;
>
> (2) For occupational disease due to toxic exposure, but not including mesothelioma, an amount equal to two hundred percent of the state's average weekly wage as of the date of diagnosis for one hundred weeks paid by the employer; and
>
> (3) **In cases where occupational diseases due to toxic exposure are diagnosed to be mesothelioma:**

---

[2] In 2013, the legislature amended Section 287.120.2 and inserted the "by accident or occupational disease" language. The statute now provides that "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such injury or death **by accident or occupational disease**, except such rights and remedies as are not provided for by this chapter." (Emphasis added).

5

(a) **For employers that have elected to accept Mesothelioma liability under this subsection, an additional amount of three hundred percent of the state's average weekly wage for two hundred twelve weeks shall be paid by the employer or group of employers such employer is a member of. Employers that elect to accept Mesothelioma liability under this subsection may do so by either insuring their liability, by qualifying as a self-insurer, or by becoming a member of a group insurance pool. A group of employers may enter into an agreement to pool their liabilities under this subsection. If such group is joined, individual members shall not be required to qualify as individual self-insurers. Such group shall comply with section 287.223. In order for an employer to make such an election, the employer shall provide the department with notice of such an election in a manner established by the department. The provisions of this paragraph shall expire on December 31, 2038; or**

(b) For employers who reject mesothelioma under this subsection, then the exclusive remedy provisions under section 287.120 shall not apply to such liability. The provisions of this paragraph shall expire on December 31, 2038; and

(4) The provisions of subdivision (2) and paragraph a of subdivision (3) of this subsection shall not be subject to suspension of benefits as provided in subsection 3 of this section; . . .

(Emphasis added).

The Missouri Supreme Court considered a constitutional challenge to Section 287.200.4 in Accident Fund Ins. Co. v. Casey, 550 S.W.3d 76 (Mo. banc 2018). In that case, Casey died from mesothelioma caused by repeated exposure to asbestos at his workplace. Id. at 79. At the time of Casey's last employment in 1990, the employer was insured by a "now-defunct" insurance company. Id. at 78 n.3. However, when Casey filed his claim for benefits in February of 2015, the employer was covered under an insurance policy from a different insurer. Id. The policy included an endorsement stating that the policy provides insurance benefits for the additional benefits provided in Section 287.200.4(3). Id.

The court first considered whether the insurer was liable for "[e]nhanced [m]esothelioma [b]enefits." The court stated:

6

Missouri's workers' compensation law was amended in 2014 to provide enhanced compensation for persons diagnosed with occupational diseases such as mesothelioma. Section 287.200.4(3). Coverage is provided for "all claims filed on or after January 1, 2014, for occupational diseases due to toxic exposure which result in permanent and total disability or death." Section 287.200.4. Employers may either accept or reject liability for mesothelioma. If an employer elects to accept liability, it must insure its "entire liability" under the [A]ct, which includes accepting all of the [A]ct's provisions. Section 287.280.1; Allen v. Renfrey, 237 Mo.App 542, 174 S.W.2d 345, 350 (1943). In other words, an insurer cannot avoid certain liabilities by constructing its policy to exclude certain provisions of the workers' compensation statute and cover only the provisions it prefers.

Id. at 80.

The insurer argued that it could not be held liable because it did not insure the employer when Mr. Casey was last exposed to asbestos. Id. Section 287.063.2 is referred to as the "last exposure rule" and provides that the "employer liable for [workers' compensation benefits] shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease." Id. The court stated that the last exposure rule was immaterial for the case being considered and the "relevant inquiry in this matter is not under whose employment Mr. Casey was last exposed, but whether the terms of Employer's policy provide coverage." Id. at 81. The court held that "[i]nsurer provided coverage to Employer by expressly adopting section 287.200.4 into its endorsement." Id.

The court next considered the constitutional challenge to Section 287.200. The court concluded that because certain facts, such as Casey's exposure, were antecedent to the 2014 amendments this did not render Section 287.200.4 an unconstitutional retrospective law as applied to Casey's claim. Id. at 81-82. Casey is distinguishable from the present case but is instructive.

The instant case presents an issue of first impression for this Court. The Commission stated that, "the crux of this matter is whether the insurer of a long-defunct employer can be held liable for the new 'enhanced benefits' set forth in [Section] 287.200.[4]."

7

## Point I

In their first point, Claimants contend the Commission erred by denying compensation because Valley Farm elected to accept liability for the benefits set forth in Section 287.200.4(3)(a). Claimants assert "an election to accept is itself defined within the strictly construed statute as simply having insurance coverage in the first place."

"Worker's compensation law is entirely statutory, and when interpreting the law, we ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent." Keaney v. Treasurer of Mo., 415 S.W.3d 774, 777 (Mo. App. E.D. 2013) (citation and internal quotation marks omitted). "Provisions of an entire legislative act should be construed together and, if reasonably possible, all of its provisions must be harmonized." Id. "[T]he law favors a statutory interpretation that tends to avert an unreasonable result." Id.

A ruling that Claimant is entitled to benefits provided in 287.200.4(3)(a) is consistent with the statute's language, and with other provisions in the Act. Such a ruling also limits employers' civil liability exposure as intended by the Missouri Legislature, and preserves the "bargain" of workers' compensation law.

Section 287.200.4(3)(a) provides three methods by which an employer may "elect to accept" mesothelioma liability: (1) "insuring their liability," (2) qualifying as a self-insurer, or (3) becoming a member of a group insurance pool. The statute does not require an employer to purchase new insurance but only to insure their liability. Section 287.200.4(3)(a) also does not state when a policy covering these benefits must have been purchased. Under strict construction, the legislature defined "elect to accept" in terms of specific criteria, the three methods.

8

Pursuant to the last exposure rule, when the insurers provided coverage in 1984, they were insuring and knew of their potential liability "regardless of the length of time" for an occupational disease to manifest and be compensable. Section 287.063.2 RSMo. (1986). Further, Section 287.280.1 states that "[e]very employer subject to the provisions of this chapter shall on either an individual or group basis **insure their entire liability** under the workers compensation law." See Casey, 550 S.W.3d at 80 (emphasis added). In the present case, there was insurance coverage from solvent insurers at the time of last exposure that covered Valley Farm's entire liability under the Act, and therefore under Section 287.200.4(3)(a) Valley Farm "elected to accept" by "insuring their liability."[3] This comports with the holding in Casey: the relevant inquiry is whether the terms of the policy provide coverage. Id. at 81.

Moreover, the fact that the benefits in Section 287.200.4(3) did not exist when the policies were written does not control. It is well established that the law in effect on the date of injury governs a claim under the Act. Pavia v. Smitty's Supermarket, 366 S.W.3d 542, 549 (Mo. App. S.D. 2012) (citations omitted). Missouri law recognizes the benefit level in effect at the date of injury is the compensable amount and insurers providing coverage at the time of last exposure are liable to pay the increased benefits.

In McGhee v. W.R. Grace & Co., the claimant contracted asbestosis after years of working for the employer in a plant that manufactured home insulation containing asbestos. 312 S.W.3d 447, 449-50 (Mo. App. S.D. 2010). The claimant sustained an occupational disease that rendered him permanently and totally disabled. Id. at 450. At issue, was whether the employee's benefits

---

[3] The Division of Workers' Compensation could not locate the physical policies at issue in its archives. Regardless, Section 287.310.1 provides that "[e]very policy of insurance against liability under this chapter shall be in accordance with the provisions of this chapter." See Allen, 174 S.W.2d at 350 (holding that "the [A]ct becomes a part of any insurance policy which is written, and itself determines the scope of the insurer's undertaking in any matter involving the claim of an injured employee.").

9

should be calculated at the rate of last exposure in 1977, or the higher rate in effect at the time of diagnosis and when the disease was compensable, 2001. Id. at 455. The court stated "[c]ompensation is not being made because Claimant was last exposed to asbestos in 1977; rather, compensation 'is being made' because Claimant has an occupational disease that was diagnosed in 2001." Id. at 456. The court concluded the date of injury, 2001, was applicable because this "is the date on which the injury becomes 'compensable' – the date on which the claimant becomes disabled." Id. In the present case, Hegger's date of injury is in March of 2014, and under the last exposure rule one of the insurers would be liable for benefits under Section 287.200.4(3)(a) as it is presently written.

Further, as now provided under Section 287.200.4(3) employers which still exist, such as in Casey, can elect to accept by one of the three methods when the insurance company that held the policy at the time of last exposure is insolvent. But under the Commission's interpretation herein, not all existing employers may be shielded from civil liability.[4] Existing employers that exposed their employees to asbestos in Missouri decades ago may now operate out-of-state. If these employers fail to elect to accept by one of the three methods, then by default they will be deemed to have elected to reject the benefits of Section 287.200.4(3)(a), and will be subject to potential significant civil liability. Section 287.200.4(3)(b). Moreover, as with the foreign company, a non-existent employer, such as in this case, that does not elect will by default be deemed to have rejected the benefits.

---

[4] In its decision, the Commission stated "[t]he insurance carrier with coverage as of the date of last exposure has been held liable for payment of traditional benefits. *Enyard v. Consolidated Underwriters*, 390 S.W.2d 417 (Mo. App. 1965). We question whether employer's failure (i.e. inability) to take the affirmative steps necessary to accept liability for the additional benefits provided under [Section] 287.200.4(3) would relieve said insurer of liability for other benefits under the Act. This, issue, however, is not before us."

10

For occupational diseases due to toxic exposure, but not mesothelioma, there is not any provision in Section 287.200.4 for an election. Accordingly, an employee with any occupational disease due to toxic exposure, other than mesothelioma, would be eligible for benefits regardless of whether their employer still existed but a mesothelioma victim whose last exposure employer no longer existed would not be entitled to the additional benefits. This is contrary to the legislature's recognition of the severity of mesothelioma for the employer as to potential civil liability and the employee for increased benefits, as compared to employees who suffer from any of the other serious but less virulent occupational diseases due to toxic exposure.

Further, insurance coverage facilitates the "bargain" between employers and employees. The legislature's awareness of the serious ramifications for employers and employees whose employment was the prevailing factor for a mesothelioma diagnosis is reflected by the legislature's language, in particular the increased amount of benefits, provided in Section 287.200.4(3)(a). To accept the Commission's interpretation of the statute, would bar a class of employees from receiving the benefits of the statute. Given the long latency period between an employee's exposure to asbestos and development of mesothelioma, a significant number of employers will likely be out of business when the employee is diagnosed. Employees who worked for these companies would not be subject to the exclusivity of workers' compensation law and could conceivably avail themselves of common-law remedies in the circuit court. But, as in the present case, where the company has been out of business for twenty years, an employee, like Hegger, likely would not have any remedy in civil court. "Mutuality of the Act's benefits and burdens is a fundamental precept of the Act." Cook, 353 S.W.3d at 42 (Welsh, J. dissenting).

Claimant's interpretation of section 287.200.4 and other provisions of the Act comports with the statutes' language and purpose. The ramifications of this opinion are limited in scope as the number of claimants are declining because of the substantial restrictions regarding asbestos

use. In apparent recognition of the decline in claimants, the legislature chose to sunset the enhanced benefits on December 31, 2038. Section 287.200.4(3)(a). Claimants' first point is granted.[5]

### Point II

In their second point, Claimants argue the Commission erred in concluding that as the employer of last exposure, Valley Farm was required to provide the Division of Workers' Compensation with notice of an election to accept liability for the increased benefits in the statute. The Commission relied on the language in Section 287.200.4(3)(a).

As previously discussed, Section 287.200.4(3)(a) provides, in part, "[e]mployers that elect to accept Mesothelioma liability under this subsection may do so by either insuring their liability, by qualifying as a self-insurer, or by becoming a member of a group insurance pool." The statute then has three sentences which all use the terms "such group." Further, these three sentences have language for members of group insurance pools. The statute next states "[i]n order for an employer to make such an election, the employer shall provide the department with notice of such an election in a manner established by the department."

---

[5] If the dissent is correct as to its interpretation of elect to accept, Hegger may have the right to request Valley Farm to elect to accept workers' compensation coverage under the winding-up corporate provisions set forth in Section 355.691. Debaliviere Place Assoc. v. Veal, 337 S.W.3d 670, 676 (Mo. banc 2011). "There is no set period of winding up and liquidation" of a dissolved corporation. Charles Hansen and Don G. Lents, MISSOURI CORPORATION LAW & PRACTICE, section 9.3(b)(1), p. 9-29 (11th Ed. 2017). An assignment of the right to collect under a contract over twenty years after dissolution of corporation is a "permissible [winding up] activity." Debaliviere, 337 S.W.3d at 675. The law of the state of incorporation applies generally to internal corporate affairs, such as dissolution, except "forum states . . . have cautiously applied the forum states' laws to internal affairs of those corporations under limited circumstances." Yates v. Bridge Trading Co., 844 S.W.2d 56, 61 (Mo. App. E.D. 1992) (refusal to apply Delaware law concerning corporate internal affair after dissolution); see State ex rel. National Supermarkets, Inc. v. Dowd, 1 S.W.3d 595 (Mo. App. E.D. 1999). The esteemed authors of MISSOURI CORPORATION LAW & PRACTICE recognized, "In the case of some tort claims, this [statute of limitations and capable of ascertainment] may not happen for thirty or more years from the date of exposure-and throughout this extended period; the dissolved corporation cannot be terminated with finality. Assets distributed to shareholders, however, will not be subject to such late-filed claims, which may be satisfied only from the applicable insurance." Section 9.2(d)(3), p. 9-17 (citing Section 351.483.2).

Under strict construction, the statute's language reflects that the notice provision refers to the third possible election: employers which elect to be part of a group insurance pool. Claimants' second point is granted.

## Conclusion

The Commission's decision is reversed and the cause remanded for the Commission to determine which insurer provided coverage when Hegger was last exposed to asbestos and for further proceedings consistent with this opinion.[6]

Gary M. Gaertner, Jr., Judge

Colleen Dolan, J., concurs.
Kurt S. Odenwald, P.J., dissents in separate opinion.

---

[6] Amerisure Insurance Company and Travelers Indemnity Company of America assert that if this Court reverses the Commission's decision, then they are challenging the constitutionality of Section 287.200.4 as an improper retrospective civil law, and move for transfer to the Missouri Supreme Court. In a previous order, this Court stated that the issue "appears to have been resolved by the Missouri Supreme Court's decision [in Casey] and thus, is not a real and substantial claim but merely colorable." We deny the insurers' request to transfer.



# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| VINCENT HEGGER (DECEASED), | ) | ED106278 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Labor and Industrial |
| vs. | ) | Relations Commission |
| | ) | |
| VALLEY FARM DAIRY COMPANY, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 21, 2019 |

### Dissent

"The rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately to achieve a desired result. Instead, the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." Parktown Imps., Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009). The majority opinion interprets the statutory provisions at issue in a compassionate effort to provide increased workers' compensation benefits to the family of the deceased employee. I appreciate the sentiments driving the majority's analysis and interpretation of the Section 287.200.4,[1] which the Missouri Legislature enacted to provide enhanced statutory benefits to employees suffering from mesothelioma due to toxic exposure in the workplace. Nevertheless, I respectfully dissent, because in my opinion the majority does not give effect to the express language and legislative

---

[1] All Section references are to RSMo (2016) unless otherwise noted.

intent of Section 287.200.4, which provides enhanced mesothelioma benefits to victims only if their employer affirmatively elects to accept liability for enhanced coverage in exchange for the exclusivity protection of the Workers' Compensation Act (the "Act"). The employer in this case undertook no affirmative act to exercise its choice to accept liability under the statute. The employer could not do so because it had no legal existence when the statutory revisions providing for the acceptance of liability for enhanced benefits were enacted. I do not agree with the majority's interpretation of Section 287.200.4, which clearly and plainly contradicts the expressed intent of the legislature. The Missouri Labor and Industrial Commission (the "Commission") properly interpreted and applied Section 287.200.4. The Commission made a difficult decision from the human perspective, but the correct decision under the plain language of Section 287.200.4 and its legal obligation to apply the law as written—not as it would have it written. For that reason, I would affirm the Commission's denial of the claim seeking an award of benefits under Section 287.200.4.

## Factual and Procedural History

Vincent Hegger ("Hegger") worked full-time as a maintenance worker at Valley Farm Dairy Company ("Valley Farm"). Valley Farm utilized a variety of industrial equipment while producing dairy products. Hegger was exposed routinely to respirable asbestos dust in the course of his employment at Valley Farm. Hegger worked at Valley Farm from 1968 to 1984. Doctors first diagnosed Hegger with mesothelioma thirty years after he left the employ of Valley Farm. Hegger died from his illness in 2015.

Valley Farm was fully insured for occupational-disease liability at the time Hegger stopped working at Valley Farm. Amerisure Insurance Company provided insurance coverage to Valley Farm from October 1983 until October 1984. Travelers Insurance provided insurance

2

coverage to Valley Farm from October 1984 until October 1985. Valley Farm went out of business in 1998.

Steven Hegger ("Son") sought mesothelioma benefits with the Division of Workers' Compensation (the "Division") following Hegger's death. Son did not seek an award of traditional death benefits provided under the Act, but sought the enhanced benefits provided by legislation enacted in 2014 for victims of occupational disease. The Division's Administrative Law Judge entered an award in favor of the insurance company and Valley Farm. The Administrative Law Judge reasoned that "[t]he question at the crux of this matter is whether the insurer of a long-defunct employer can be held liable for the new 'enhanced benefits' set forth in [Section] 287.200.4[.]"

Son sought review of the award denying enhanced benefits with the Commission. Following a hearing, the Commission "conclude[d] that the enhanced mesothelioma benefits provided for in [Section] 287.200.4(3)(a) are triggered only when an employer takes an affirmative action to accept the protections of the statute by purchasing a potentially separate policy of insurance for the new, enhanced mesothelioma benefit." Because Valley Farm had ceased to exist prior to the enactment of the statute providing enhanced benefits, the Commission found that Valley Farm did not elect to accept liability for the benefits provided under Section 287.200.4(3) and denied Son's claim under that statute.

## Discussion

The majority correctly notes that this appeal presents an issue of first impression for this Court: whether the Act permits an employee to collect the enhanced benefits for mesothelioma provided under Section 287.200.4(3)(a),[2] when the employer went out of business and ceased to

---

[2] Section 287.200.4(3) is sometimes referred herein as "the 2014 Amendment."

3

legally exist prior to Section 287.200.4's effective date. A brief discussion of the history of Section 287.200.4 is appropriate.

## I. Missouri Workers' Compensation Act—Mesothelioma and Accident Fund Ins. Co. v. Casey[3]

Mesothelioma is a malignant condition attributed to asbestos exposure. Hagen v. Celotex Corp., 816 S.W.2d 667, 669 (Mo. banc 1991). "Asbestos is a mineral product which once was widely used in insulation materials. Over a period of years distressing symptoms appeared in persons who had had substantial exposure to asbestos." Id. Mesothelioma "is actuated by asbestos fibers which make their way to the pleural cavity." Id. at 669–70.

The Act has undergone a number of significant legislative revisions relevant to this analysis. In 2005, Section 287.800 was amended to require courts to strictly construe the language of the Act. Section 287.800 RSMo (Cum. Supp. 2007). The 2005 amendment removed claims for occupational disease from the Act's exclusivity provision, and restored the ability of employees with claims of employment-related occupational disease to pursue legal remedies against employers through civil litigation in the trial courts. The legislative revisions of 2005, whether intentional or inadvertent, significantly broadened an employer's potential liability for occupational disease. With this expansion came confusion as well.

"Because coverage for occupational diseases was not contemplated at the time the original workers' compensation statutes were enacted, the courts have had difficulty in applying the law to claims for occupational disease." McGhee v. W.R. Grace & Co., 312 S.W.3d 447, 455 (Mo. App. S.D. 2010). For example, in State ex rel. KCP & L Greater Mo. Operations Co. v. Cook, the Western District held that "the Act's exclusivity provisions are limited to injuries or death caused by an 'accident' as defined in [Section] 287.020.2[.]" 353 S.W.3d 14, 18–19 (Mo.

---

[3] Accident Fund Ins. Co. v. Casey, 550 S.W.3d 76 (Mo. banc 2018) [hereinafter Casey].

4

App. W.D. 2011). Further, the Western District held that occupational diseases such as mesothelioma do not arise out of an "accident" as defined in Section 287.020.2. Id. at 19. However, in Peters v. Treasurer of Mo., the Eastern District held that the term "injury" in the Act encompassed occupational diseases. 404 S.W.3d 322, 326 (Mo. App. E.D. 2012). Both the Western District and Eastern District interpreted the Act, as revised in 2005, to permit common-law claims against employers by employees who no longer fell within the Act's exclusivity provision. Cook, 353 S.W.3d at 19–20 (quoting Mo. All. for Retired Ams. v. Dep't of Labor & Indus. Relations, 277 S.W.3d 670, 680 (Mo. banc 2009)); Amesquita v. Gilster-Mary Lee Corp., 408 S.W.3d 293, 301 (Mo. App. E.D. 2013) ("[E]mployees claiming work-related injuries as a result of occupational disease are not limited to the remedies provided by Chapter 287, and retain their right to pursue their common law claims in circuit court.").

In an attempt to bring clarity to the interface between occupational diseases and employee remedies provided under the Act, the Missouri General Assembly amended the Act in 2014. These legislative revisions provided targeted compensation for individuals diagnosed with occupational diseases such as mesothelioma. The revisions further provided the opportunity to restore the exclusivity protections of the Act for claims against employers based upon occupational diseases should a claimant elect to seek the benefits provided. Cf. Casey, 550 S.W.3d at 80. Significantly, the exclusivity protections of the Act attach to the enhanced benefits provided for mesothelioma under Section 287.200.4 only by the employer's election to accept liability for such benefits under the 2014 Amendment. Section 287.200.4(3)(b). Sections 287.020 and 287.200.4 provide, in relevant part:

> For the purposes of this chapter, "occupational diseases due to toxic exposure" shall only include the following: mesothelioma . . . .

5

For all claims filed on or after January 1, 2014, for occupational diseases due to toxic exposure which result in a permanent total disability or death, benefits in this chapter shall be provided as follows:

...

(3) In cases where occupational diseases due to toxic exposure are diagnosed to be mesothelioma:

    (a) For employers that have elected to accept mesothelioma liability under this subsection, an additional amount of three hundred percent of the state's average weekly wage for two hundred twelve weeks shall be paid by the employer or group of employers such employer is a member of. Employers that elect to accept mesothelioma liability under this subsection may do so by either insuring their liability, by qualifying as a self-insurer, or by becoming a member of a group insurance pool. A group of employers may enter into an agreement to pool their liabilities under this subsection. If such group is joined, individual members shall not be required to qualify as individual self-insurers. Such group shall comply with section 287.223. In order for an employer to make such an election, the employer shall provide the department with notice of such an election in a manner established by the department. . . .

    (b) For employers who reject mesothelioma under this subsection, then the exclusive remedy provisions under section 287.120 shall not apply to such liability.

The Supreme Court of Missouri has interpreted Section 287.200.4 as prohibiting "an insurer [from] avoid[ing] certain liabilities by constructing its policy to exclude certain provisions of the workers' compensation statute and cover[ing] only the provisions it prefers." Casey, 550 S.W.3d at 80. "The triggering occurrence—the event commencing liability coverage—is the filing of a claim." Id.

Both parties and the majority opinion analogize the case before us to the Missouri Supreme Court's recent decision regarding the Act. Casey, 550 S.W.3d 76. While the majority acknowledges that the facts of Casey are markedly different from those facts presented here, it nonetheless suggests Casey is instructive to its holding. I disagree.

Like here, the claimant in Casey died from mesothelioma caused by repeated exposure to asbestos at his workplace. Id. at 78. At the time the claimant filed the claim, the claimant's employer was insured. Id. at 79. The insurer argued that it was not liable for the benefit claim

6

because it did not insure the employer at the time of the claimant's last exposure. Id. at 79–80. However, unlike here, the claimant's employer affirmatively "elected to accept mesothelioma liability under Section 287.200.4" by purchasing a policy from the insurer that covered the *"explicitly contemplated enhanced compensation for mesothelioma claims filed on or after January 1, 2014."* Id. at 80 (emphasis added). The Supreme Court held that "[a]n ordinary purchaser of insurance would understand, per its own policy, [the i]nsurer covered [the e]mployer for all liabilities arising out of *all mesothelioma claims* filed on or after January 1, 2014—including [the claimant]'s claim, which was filed in February 2015." Id. Further, "[i]f recovery under [S]ection 287.200.4 were limited to individuals who were last exposed to asbestos during the policy period, this policy's mesothelioma endorsement—and similar provisions in countless other insurance policies—would be rendered essentially worthless." Id. at 81. The Supreme Court held if the insurer and employer affirmatively assented to provide the enhanced benefits set forth in Section 287.200.4, then the claimant's claim is covered, even if the claimant's last exposure to asbestos, like that of Hegger, occurred decades before the claimant filed the claim. Id. at 82. Unlike the employer in Casey, Valley Farm did not assent to provide the enhanced benefits provided under the 2014 Amendment because Valley Farm never purchased a policy of insurance covering liabilities arising out of all mesothelioma claims filed on or after January 1, 2014. Contrary to the majority's view, this difference is critical to our scrutiny of Valley Farm's liability for Hegger's claim.

## II.     Section 287.200.4 Precludes Hegger's Claim

The majority adopts Hegger's argument that, contrary to the Commission's findings, Valley Farm elected to accept mesothelioma-benefit liability under a strict construction of Section 287.200.4(3). The majority explains that because Valley Farm in 1984 had procured workers' compensation insurance coverage for *any* liability under the Act when Hegger was last

7

employed, such insurance satisfies the employer's election requirement enacted thirty years later under Section 287.200.4.

Further, the majority focuses on the public-policy concern raised by Hegger should he be denied the ability to pursue a claim for enhanced benefits under Section 287.200.4(3). Specifically, Hegger reasoned that where the employer who last exposed the employee to asbestos no longer exists—which encompasses a significant percentage of employers due to the long latency period of mesothelioma—the employee will be incapable of receiving any enhanced benefits under the Act. Moreover, Hegger, and consequently the majority, reason that the Act intended to provide coverage expansively to account for just such a situation as Hegger experienced.

I dissent from the majority for two reasons: first, I disagree that Section 287.200.4 permits the reading suggested by the majority: that employers who were insured for mesothelioma claims at the time of the employee's last exposure automatically "elected to accept" the enhanced mesothelioma benefits provided under Section 287.200.4. Second, I diverge from the majority's public-policy analysis saying that the legislature's intended purpose of Section 287.200.4 was to provide enhanced coverage to mesothelioma victims regardless of the legislature's differential treatment of mesothelioma benefits versus other occupational-disease benefits.

A.    Strict Construction

In a very brief discussion, the majority concludes that the term "elect to accept" is a statutorily defined term, thereby precluding any analysis of the plain and ordinary meaning of the language contained in Section 287.200.4.[4] Specifically, the majority reasons that because Casey

_____

[4] Interestingly, the majority then looks beyond the language of the statute to seek support for its reasoning in the last-exposure rule, reasoning that under the last-exposure rule, insurers providing workers' compensation coverage

8

requires an employer to "insure their entire liability under the workers compensation law," and because "insuring liability" is one of the statutorily defined ways an employer may "elect to accept," Valley Farm "elected to accept" liability for the enhanced mesothelioma benefits in 2014 by having insured its liability under the Act in 1984. I firmly disagree with the majority's purported strict construction analysis of the statute because it wrongfully places a past-tense allowance on "electing to accept" contrary to the plain and ordinary meaning of the statute.

The Court must construe Section 287.200.4 strictly and interpret the Act as it is plainly written. See Section 287.800.1; Dickemann v. Costco Wholesale Corp., 550 S.W.3d 65, 68 n.5 (Mo. banc 2018); Parktown Imps., Inc., 278 S.W.3d at 672 ("This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue."). I would find that the Act is unambiguous as written; thus, the Court must give effect to the legislature's chosen language according to the "plain and ordinary meaning, as typically found in the dictionary." Dickemann, 550 S.W.3d at 68 (internal quotations omitted); State v. Jones, 479 S.W.3d 100, 107 (Mo. banc 2016); Marshall v. Marshall Farms, Inc., 332 S.W.3d 121, 125 (Mo. App. S.D. 2010) (citing State ex rel. Young v. Wood, 254 S.W.3d 871, 872–73 (Mo. banc 2008)). Importantly, the Court may not "add words to a statute under the auspice of statutory construction." Peters v. Wady Industries, Inc., 489 S.W.3d 784, 792 n.6 (Mo. banc 2016) (quoting Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue, 94 S.W.3d 388, 390 (Mo. banc 2002)); Marshall, 332 S.W.3d at 125 (quoting State ex rel. Young, 254 S.W.3d at 873). Part of the plain-meaning analysis necessarily includes ascertaining the statute's temporal reach considering the legislature's choice of verb tense. See Carr v. United States, 560 U.S. 438, 448 (2010); see also 1 U.S.C. Sect. 1 ("words used in the present tense include the future as well

in 1984 knew of their potential liability for coverage of an occupational disease "regardless of the length of time" it takes that occupational disease to manifest.

9

as the present"); United States v. Wilson, 503 U.S. 329, 333 (1992); Scott v. Scott, 423 P.3d

1275, 1281 (Utah 2017) (emphasis omitted) (noting that the "present participle of any verb—like

cohabitating—paired with *is* creates a 'continuous tense[]'" indicating "present or ongoing"

action). But see Jam v. Int'l Fin. Corp, 139 S. Ct. 759, 774 (2018) (Breyer, J., dissenting)

(quoting Carr, 560 U.S. at 463) (Alito, J., dissenting) ("The problem is simple: 'Without

knowing the point in time at which the law speaks, it is impossible to tell what is past and what is

present or future.' It is *purpose*, not *linguistics*, that can help us here.").

When reviewing the language of Section 287.200.4(3)(a), both the purpose and the

language of the 2014 Amendment resolve any issue of temporal ambiguity. The majority

interprets the phrase "by insuring" to encompass any past acts of the employer to insure liability.

However, the use of the gerund acting as the object of a preposition mandates that this Court

review the tense of what the gerund is modifying: here, "elect."[5] Elect, as a present-tense verb,

denotes present or future action as of when Section 287.200.4 was enacted in 2014. See 1 U.S.C.

Sect. 1.

By reading "elect to accept" "by . . . insuring their liability" to permit past actions of

insuring liability to qualify as future elections, the majority reads Section 287.200.4 to say

---

[5] A "gerund" is "the English verbial noun in –ing that has the function of a substantive (as subject or object of a verb, object of a preposition, or complement of a verb) and at the same time shows the verbal features of tense and voice (as choosing, having chosen, being chosen), capacity to take adverbial qualifiers, and capacity to govern objects when the verb is transitive and that may have a subject[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 952 (2002). "By" functions as a preposition. Id. at 306. A "preposition" is "a linguistic form that combines with a noun, pronoun, or noun equivalent to form a phrase that typically has an adverbial, adjectival, or substantival relation to some other word[.]" Id. at 1791.

Section 287.200.4(3)(a) states that: "Employers that **elect** to accept mesothelioma liability under this subsection may do so **by** either **insuring** their liability, **by qualifying** as a self-insurer, or **by becoming** a member of a group insurance pool." (emphasis added). The phrases "by insuring," "by qualifying," and "by becoming," when analyzed linguistically, function as gerunds acting as the object of the preposition "by." Under a plain and ordinary reading of Section 287.200.4, a lay person would understand that the three phrases above modify the present-tense term "elect" and specify how employers may elect liability under Section 287.200.4. See generally, Robert C. Farrell, *Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions*, 40 LOY. U. CHI. L.J. 1, 33–43 (2008).

10

employers that **elect** to accept mesothelioma liability under this subsection may do so *by* either *having insured* their liability, *by having qualified* as a self-insurer, or *by having become* a member of a group insurance pool. The majority's interpretation changes the tense written by the legislature. Courts are not permitted to "rewrite the statutes the legislature in its wisdom has enacted no matter how such rewriting is desired by a particular group." Pittman v. Cook Paper Recycling Corp., 478 S.W.3d 479, 483 (Mo. App. W.D. 2015). Courts act beyond their authority when they disregard the plain meaning of the words used by the legislature and thereby alter the natural and logical consequence of those words. See Carr, 560 U.S. at 448; Peters, 489 S.W.3d at 792 n.6; Pittman, 478 S.W.3d at 483. Although Valley Farm insured its liability at the time of Hegger's last exposure, that action predated the 2014 Amendment. Valley Farm's past conduct did not fulfill the statutory mandate of a present action for employers to elect to accept the enhanced liability of Section 287.200.4. See Lewis v. Treasurer of Mo., 435 S.W.3d 144, 154 (Mo. App. E.D. 2014) ("A strict construction of a statute presumes nothing that is not expressed."); Harrah v. Tour St. Louis, 415 S.W.3d 779, 782 (Mo. App. E.D. 2013) ("Under strict construction analysis, courts are required to effectuate legislative intent *as reflected in the plain and ordinary language of the statute.*") (emphasis in original) (internal quotations omitted). Moreover, Valley Farm never was capable of electing to accept the enhanced liability of the 2014 Amendment because Valley Farm had no legal existence in 2014.

Having properly interpreted the verb tense of section 287.200.4, I now turn to the plain meaning of the phrase "elect to accept." Contrary to the majority's determination, the legislature did not intend that Section 287.200.4 apply automatically to employers that did not choose to "elect to accept" the enhanced mesothelioma benefits.

11

Absent a statutory definition, the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. Jones, 479 S.W.3d at 107; see also Oak Creek Whitetail Ranch, L.L.C. v. Lange, 326 S.W.3d 549, 550 (Mo. App. E.D. 2010) (quoting Brinker Mo. Inc. v. Dir. of Revenue, 319 S.W.3d 433, 437–38 (Mo. banc 2010)). Section 287.200.4 uses the phrase "elect to accept" and then explains that employers may "elect to accept mesothelioma liability" in three ways. I disagree with the majority opinion that these three methods of electing to accept mesothelioma liability define the words "elect," "accept," or their combination. Accordingly, I look to the plain and ordinary meaning of those words as derived from a dictionary. Dickemann, 550 S.W.3d at 68. As discussed below, the plain language and clear meaning of the phrase "elect to accept" used in Section 287.200.4(3)(a) requires an affirmative, future act by employers.

"Elect," according to the dictionary, means, "to make a selection of" or "to choose." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 731 (2002). "Accept" means, "to receive with consent (something given or offered)." Id. at 10. In order to "elect to accept" the mesothelioma benefit in Section 287.200.4(3)(a), the employer must choose to receive the benefit. The context of these words within the statute leaves no other reasonable meaning of these words as used by the drafters of the 2014 Amendment. The employer may choose to accept liability by either affirmatively acting to insure its liability, affirmatively qualifying as a self-insurer, or affirmatively becoming a member of a group insurance pool. Neither relying upon a past act nor simply abstaining from a decision to accept the enhanced benefits meet the statutory requirements of "elect to accept."

The following example demonstrates the logical failings of the majority opinion: Assume that the employer in Casey did not obtain a policy endorsement specifically insuring the

enhanced benefits provided in Section 287.200.4, but merely continued the insurance coverage that was in place prior to the enactment of Section 287.200.4.[6] The employer in Casey still existed when the employee was diagnosed with mesothelioma in 2014 and filed a claim for benefits in 2015. Casey, 550 S.W.3d at 79. Had the employee pursued a civil claim against the employer for damages resulting from his toxic exposure to asbestos, would his employer have been protected by the Act's exclusivity provisions? The employee would argue the Act's exclusivity protection does not extend to an employer *who took no action after the passage of the 2014 Amendment,* leaving the employee free to pursue his claim in the civil courts unencumbered by the exclusivity limitations imposed by the Act. Following the majority's analysis to its logical conclusion reveals its fallacy. Any employer that provided workers' compensation insurance for mesothelioma before the passage of the 2014 Amendment would automatically be protected from civil liability by the Act's exclusivity provisions because said employer would be deemed to have "elected to accept" liability for the enhanced coverage. If automatic coverage and reinstatement of the exclusivity protection for mesothelioma was the legislative intent behind the 2014 Amendment, the plain language of the amendment could have, and would have, expressly stated as much. But it did not.

Moreover, the majority's interpretation of Section 287.200.4(3)(a) renders meaningless the language of Section 287.200.4(3)(b) which addresses employers who reject the mesothelioma benefits under this section. Under the majority's interpretation, any employer previously insuring for any claim under the Act could not reject the enhanced benefits provided under

---

[6] At the time Casey filed the claim, his employer was covered under an insurance policy which included a specific endorsement titled "Missouri Notification of Additional Mesothelioma Benefits Endorsement." Casey, 550 S.W.3d at 79. The endorsement provided in pertinent part: "Section 287.200.4, subdivision (3), of the Missouri Revised Statutes provides additional benefits in the case of occupational diseases due to toxic exposure that are diagnosed to be mesothelioma and result in permanent total disability or death. Your policy provides insurance for these additional benefits." Id.

13

Section 287.200.4(3)(a). So then, what purpose is the served by sub-paragraph (b)? "Courts never presume that our legislature acted uselessly and should not construe a statute to render any provision meaningless." Caplinger v. Rahman, 529 S.W.3d 326, 332 (Mo. App. S.D. 2017) (citing State v. Hall, 321 S.W.3d 453, 455 (Mo. App. S.D. 2010)). The majority misinterprets the plain meaning of Section 287.200.4 and fails to give meaning to the legislature's intent to provide employers a clear choice to either elect to accept or reject coverage.

Supporting my reading of the phrase "elect to accept," the Supreme Court of Missouri expressly noted that "[e]mployers *may* **either accept or reject liability** for mesothelioma." Casey, 550 S.W.3d at 80 (emphasis added). Further, "*[i]f* an employer *elects to accept liability*, it must insure its 'entire liability' under the [A]ct, which includes accepting all of the [A]ct's provisions." Id. (emphasis added) (citing Section 287.280.1; Allen v. Raftery, 174 S.W.2d 345, 350 (Mo. App. S.L.D. 1943)). This language clearly reinforces the employer's *choice* of accepting the mesothelioma liability as the liability existed at the time of the insurance policy's inception (in which case the employer is not protected by the exclusivity provisions of the Act), or choosing instead to accept liability for the enhanced benefits created with the 2014 Amendment (and thereby obtaining the exclusivity protection provided under the Act). Critical here, the employer is given a choice—the choice is not imposed upon the employer. See id. While most employers existing in 2014 likely elected to accept the enhanced liability, this Court is without authority to impose an "election to accept" such liability upon an entity that neither existed in 2014 nor exists today. An employer is not capable of affirmatively acting to elect to accept liability under Section 287.200.4(3) if it had no legal existence upon the enactment of the statute.

14

Under either the purpose reading or the strict linguistic reading of the Act, Valley Farm neither insured itself against enhanced mesothelioma liability nor could it choose in the future to insure against such liability. Section 287.200.4(3)(a) simply does not permit reading into the 2014 Amendment words not found in the statute—words that allow an election based upon past actions completed prior to the enactment of the 2014 Amendment. Although the legislature was not precluded from enacting a statute automatically imposing liability for the enhanced mesothelioma benefits on all employers who had insured against liability for mesothelioma benefits in the past, it did not do so here.

B.    Public Policy

The majority opinion next focuses on the public-policy concerns raised by Hegger should he be denied the ability to pursue a claim under Section 287.200.4(3). Specifically, Hegger reasoned that:

> The Commission's statutory construction will utterly destroy the new law in the many cases where the employer who last exposed the employee to asbestos no longer exists. The most common occupations to suffer from asbestos-related diseases . . . primarily worked for relatively small independent contractor crews that hired out of their local unions. By nature, such employers typically had finite lifespans and often dissolved when their owners retired. . . . [A] significant number of employers (if not most) will inevitably be out of business by the time the employee is diagnosed and suffers an injury. . . . [W]hen a non-existent employer is the liable employer of last exposure . . ., the employee will be incapable of receiving the increased benefits enumerated in Section 287.200.4(3).

Hegger further argued that because Valley Farm's insurance policies were written to provide coverage for an occupational disease, such as mesothelioma, as long as the last exposure occurs during the policy period, and because the insurance policies were written broadly to cover all benefits, these provisions must be read expansively to provide coverage for the subset of benefits enumerated in Section 287.200.4(3). The majority writes that "[c]laimant's interpretation of and other provisions of the Act comport with the statute's language and purpose."

15

The majority arbitrarily dismisses or simply ignores the stark contrast between the legislature's treatment of enhanced benefits for claimants suffering from occupational diseases due to toxic exposure other than mesothelioma (which does not require an employer to elect to accept the liability) from the legislature's treatment of enhanced benefits for mesothelioma contracted by toxic exposure in the workplace (which imposes liability for the enhanced benefits only if the employer elects to accept such liability). The majority suggests that the distinction made by the legislature in addressing the different types of occupational disease is inconsistent with the legislature's recognition of the severity of potential liability for employers due to mesothelioma claims. To the contrary, the Court must presume that the legislature intended that every word, clause, sentence, and provision of a statute have effect and ought to be given meaning. See City of Bridgeton v. Titlemax of Missouri, Inc., 292 S.W.3d 530, 536 (Mo. App. E.D. 2009). "Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language." Id. (quoting Dubinsky v. St. Louis Blues Hockey Club, 229 S.W.3d 126, 130 (Mo. App. E.D. 2007)).

The words used by the legislature to differentiate between occupational diseases other than mesothelioma in Section 287.200.4(2) and mesothelioma in Section 287.200.4(3) are not superfluous, but communicate the legislature's intent to provide a different level of benefits accompanied by different requirements. See State ex rel. Goldsworthy v. Kanatzar, 543 S.W.3d 582, 586 (Mo. banc 2018) (internal quotation omitted) (determining that "[t]he legislature will not be presumed to have inserted idle verbiage or superfluous language in a statute."). Notably, Section 287.200.4(2) makes no provision excluding employers from the exclusivity protections of the Act, thereby limiting the remedies available to employees suffering from occupational

16

diseases other than mesothelioma. Under Section 287.200.4(3), employees suffering from mesothelioma retain their right to pursue a civil action against their employer who does not elect to accept liability under the 2014 Amendment. The precise drafting and detail of the 2014 Amendment demonstrates an intent to effect a difference in treatment of employees suffering from different occupational diseases. I cannot presume the legislature intended subparagraph (3) of Section 287.200.4 to be idle verbiage or superfluous language. Nor can I reason that subparagraph (3) necessarily leads to an absurd or illogical result. To be sure, Section 287.200.4 differs in its treatment of employees who suffer from differing occupational diseases. But the language of a statute or ordinance leads to "absurd or illogical results" only when there is a complete contradiction in the language or when two statutory provisions cannot be harmonized. Perkins v. Bridgeton Police Dep't, 549 S.W.3d 504, 506 (Mo. App. ED. 2018) (internal quotation omitted). I find no disharmony between subparagraphs (2) and (3)—only an intentional distinction in the enhanced remedies provided for employees suffering from different types of occupational diseases. Our purpose is not to judge the wisdom of such policy decisions, but to implement the clear intent and will of the legislature barring a constitutional prohibition.

The majority notes that the Commission's interpretation of Section 287.200.4 will potentially restrict other employees from pursuing claims due to the long latency period of mesothelioma and the possibility that employers like Valley Farm will be out of business when the employee is diagnosed. I do not disagree with the majority's concern—but I am required to counterbalance that apprehension with the express language of Section 287.200.4 and the legislature's clear knowledge of that possibility when it enacted the statutory revisions. The language of the 2014 Amendment does not suggest in any convincing way that the legislature somehow overlooked Hegger's present circumstance. Indeed, the legislature provided greater

17

enhanced benefits for victims of mesothelioma over victims of non-mesothelioma occupational diseases in recognition of the particular challenges raised by the long latency period for mesothelioma. This Court must presume the legislature intended the natural consequences of its actions and cannot substitute our preferred result. See Pittman, 478 S.W.3d at 483; Harrah, 415 S.W.3d at 782; City of Bridgeton, 292 S.W.3d at 536. As such, especially considering the desire of the legislature to allow employers the choice of electing or rejecting the enhanced benefits of Section 287.200.4—discussed in depth above—the majority's public-policy argument, however well intentioned, does not overcome the plain language and clear dictate of Section 287.200.4.

My interpretation and analysis of the 2014 Amendment is wholly consistent with this Court's ruling relating to the 2005 revisions to the Act which removed occupational diseases from the exclusivity provisions of the Act. Proponents of retaining the exclusivity protections to employers for claims of occupational disease after the 2005 revisions argued that the legislature did not intend to restore the rights of employees to pursue civil actions. Allowing such was characterized as contrary to the public policy of the Act and caused an absurd and illogical result. This Court categorically rejected that argument and held the fundamental rules of statutory construction required us to interpret the 2005 revisions as written by the legislature. Amesquita, 408 S.W.3d at 301. I am not persuaded to deviate from our approach in Amesquita when applying the rules of statutory construction to the 2014 Amendment.

I very much empathize with Hegger's situation. But the 2014 Amendment did not leave Hegger, or other similarly situated employees claiming occupational-disease-related work injuries, without a remedy. Hegger retained the full right to pursue his claims for occupational disease through either the standard remedies provided by the Act or a potentially more lucrative civil action in the circuit court, just as we allowed the claimant in Amesquita. See Amesquita,

18

408 S.W.3d at 302. The 2014 Amendment to the Act neither denies an employee suffering from mesothelioma traditional relief under the Act, nor forecloses that employee's right to pursue a civil claim for damages against the employer. Hegger's dilemma and unfortunate circumstance stem solely from the demise of his employer, Valley Farm, and not from an unintended consequence or oversight of the legislative revisions in 2014. The plain and clear language of the 2014 Amendment simply provides no exception to the affirmative election requirement as espoused by the majority opinion.[7]

The United States Supreme Court has emphatically "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Carr, 560 U.S. at 458–59 (citing Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253–54 (1992) (internal citations and quotations omitted); see also Pittman, 478 S.W.3d at 483. The words of Section 287.200.4 are unambiguous. For this reason, I would deny Point One.

---

[7] The majority suggests in a footnote that the ability to "elect to accept" liability for the enhanced mesothelioma benefits may survive the life of a corporation through the winding-up provisions of Section 355.691. Under this section, a corporation continues its corporate existence for the sole purpose of winding up and liquidating its affairs. As such, the corporate entity is statutorily mandated to preserve and protect its assets and minimize its liabilities under Section 355.691.1(1), as well as discharge or make provisions for the discharge of its liabilities and obligations under Section 355.691.1(2). Valley Farm made provisions for the discharge of its liabilities under the Act by providing insurance to cover such obligations as it had at the time it ceased to exist. The majority suggests that this wind-up provision somehow may allow a defunct corporate entity to undertake an affirmative act beyond winding up its corporate affairs and for the purpose of increasing, not minimizing, its potential liability. As noted by the majority in its footnote, any such late-filed claim potentially may be satisfied only from insurance and not against assets distributed to shareholders. Valley Farm did provide a means to discharge its liabilities to Hegger and potentially other employees through the workers' compensation insurance it carried at the time of Valley Farm's existence. But that insurance did not and cannot provide coverage for the enhanced mesothelioma benefits sought by Hegger because Valley Farm never elected to accept liability for such enhanced benefits and correspondingly never insured itself against liability for the enhanced benefits first provided under the 2014 Amendment.

19

Further, Point Two overlaps with Point One regarding the application of Section 287.200.4(3) to Hegger's claim. Because I would find Point One dispositive of this appeal, I do not address Point Two.

Conclusion

I would affirm the final award of the Commission denying compensation under Section 287.200.4.

KURT S. ODENWALD, Presiding Judge